719 So.2d 536 (1998)
STATE of Louisiana
v.
Daniel AUGUST and Veron Johnson.
No. 96-KA-2777.
Court of Appeal of Louisiana, Fourth Circuit.
September 16, 1998.
*538 Harry Connick, District Attorney of Orleans Parish, Theresa A. Tamburo, Assistant District Attorney of Orleans Parish, New Orleans, for State.
Elizabeth W. Cole, Supervising Attorney, Montrell L. Finn, Student Attorney, Tulane Law Clinic, New Orleans, for Veron Johnson.
Phillip A. Wittmann, Marc D. Winsberg, H. Minor Pipes, III, Stone Pigman, Walther, Whittmenn & Hutchinson, L.L.P., New Orleans, for Daniel E. August.
Before ARMSTRONG, PLOTKIN and McKAY, JJ.
McKAY, Judge.

I. STATEMENT OF THE CASE

On October 29, 1992, defendants, Daniel August and Veron Johnson, were indicted for the first degree murder of Floyd Marbley during the perpetration or attempted perpetration of an armed robbery in violation of La. R.S. 14:30. Defendants entered pleas of not guilty at their arraignment on November 4, 1992. On June 15, 1993 and June 18, 1993, defendants filed discovery and suppression motions. Defendant August also filed a motion for investigatory funds which was granted on June 18, 1993. Both defendants filed motions to sever which the trial court denied on April 19, 1995. The trial court denied the defendants' motions to suppress identifications and evidence on January 30, 1996. On March 20, 1996, after a three day jury trial, the defendants were found guilty as charged. The sentencing phase of trial took place on March 21, 1996. The jury recommended life imprisonment at hard labor for both defendants. The defendants filed motions for new trial and motions for post verdict judgments of acquittal on March 29, 1996. At the sentencing hearing on April 17, 1996, the trial court denied the defendants' motions for new trial and motions for post verdict judgments of acquittal. The defendants waived delays, and the trial court sentenced both defendants to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Oral argument concerning this appeal was heard by this Court on August 5, 1998.

II. STATEMENT OF THE FACTS

On September 3, 1992, homicide Detective Louis Gaydosh responded to a call of shots fired at 1230 South Telemachus Street. When he arrived on the scene he observed the victim, Floyd Marbley, lying in large pool of blood and he appeared to be dead. The paramedics arrived shortly thereafter and transported the victim to the hospital. where he was pronounced dead at 2:15 a.m.
Elaine Williams, girl friend of the victim, Floyd Marbley, testified that in September of 1992, she lived at 1230 South Telemachus, Apartment 3, with Marbley. On September 2, 1992, Williams while on her way home, she saw Floyd Marbley standing outside a store on Erato Street. She arrived home at approximately 11:30 p.m. Soon thereafter, she was awakened by a telephone call from defendant August who asked for Marbley. A few minutes later, she heard Marbley knocking at the front door. When she opened the door, Marbley was with August and Johnson. The defendants pushed Marbley inside the house. Johnson was holding a .357 caliber gun on Marbley. The defendants told Williams and Marbley to get on the bed. August then took Marbley's AK47. August asked Marbley if he had any money. After Marbley told August he did not have any money Williams gave Johnson all the money she had in her purse, eleven dollars. August told Johnson to take Williams to the bank. As she and Johnson left the apartment, Johnson stated he did not want to take the Tercel as it was a rental car. Williams drove her Mazda 626 to the bank while Johnson sat in the passenger seat pointing a .357 gun at her. Williams was unable to obtain any money as there were insufficient funds in her account. Additionally, there were photographs *539 made from videotapes recorded at the automatic teller machine located at the Claiborne Street branch of First National Bank of Commerce, taken at 12:54 a.m. and 1:01 a.m. on September 3, 1992, which were presented at trial. Both defendant Johnson and Elaine Williams are seen in the photos using the ATM machine.
When Williams and Johnson returned to the house, the defendants told Marbley to call Derrick Tapp and have Tapp come to the apartment. When Tapp came into the apartment, the defendants threatened to kill Tapp if he did not tell them where the money was. Tapp gave the defendants the few dollars he had. A short while later, they heard a car horn blow. When Marbley looked outside, he saw his friend, Carl Brown, who was also known as "Superstar." Johnson told Marbley to go outside and have Brown come inside. When Johnson realized he sent Marbley outside by himself, Johnson went after Marbley. Williams heard two to three gunshots. Thereafter, August ran outside. Williams then heard rapid gunfire. Tapp was still in the house with her. After August left, Williams called the police and locked her doors. She did not open her door until the police arrived. When she went outside, she saw Marbley lying on the ground. He had been shot in the legs and shortly thereafter died.
Homicide Detective Louis Berard spoke with Elaine Williams and Derrick Tapp at police headquarters where they identified both August and Johnson in photographic lineups. Williams had previously made a physical identification of Johnson in the emergency room at Hotel Dieu Hospital on the morning of the shooting, where she had been taken by Detective Wayne Rumore. Johnson went to the hospital the night of the shooting. Dr. Martin Hale, an emergency room physician, treated Johnson for a gunshot wound to the lower right leg. The defendant also had multiple abrasions and contusions to his body consistent with fighting. Officer Rumore then arrested defendant Johnson and obtained the defendant's clothing and a black Cascio watch, which the defendant was wearing.
Dr. Paul McGarry, a forensic pathologist with the Orleans Parish Coroner's Office, performed an autopsy on the victim, Floyd Marbley. The cause of death was seven gunshot wounds and multiple fragments wounds in the legs and left wrist and abrasions and contusions were found consistent with fighting. Dr. McGarry opined that the weapon used to shoot the victim was more than two feet from the victim and that the victim's injuries were consistent with a rapid firing weapon.
Officer Luther Randall, a crime scene technician with the Crime Lab, took photographs of the victim's apartment, a Toyota Tercel belonging to Lee Lanier, and Williams' Mazda 626. The officer also collected shell casings and blood samples from the scene. Randall found fourteen spent casings. He obtained twelve partial latent fingerprints from the Toyota Tercel, three of which were identified as Veron Johnson's fingerprints.
Officer Kenneth Leary, Jr., a firearms examiner, testified that the fourteen casings found on the scene were part of ammunition used in an AK47, a semi-automatic weapon. The officer further stated that all fourteen casings were fired from the same weapon.
Evidence at trial was heard recounting the events which had transpired over a one and one half hour span between 11:30 p.m. on September 2, 1992 and 2:15 a.m. on September 3, 1992. They began with the stealing of the Tercel, cash and a black Cascio watch and ended with the victim Floyd Marbley being pronounced dead.
At approximately 12:15 a.m. on September 3, 1992, Lee Lanier testified that he had returned home from work. As he approached his house, he noticed two young Afro-American men walking up his driveway. One of the men was holding a gun. The men requested Lanier's money, black Cascio watch and car keys. One of the men attempted to start Lanier's car, a 1986 Toyota Tercel, but was unable to do so. Lanier told him to push in the clutch. Once the two suspects started the vehicle, they left the scene. Lanier identified defendant August in a sphotographic lineup and at trial as one of the perpetrators. Lanier was unable to identify *540 the second perpetrator. Lanier's Tercel was located at the scene of the murder and his Cascio watch was found on the defendant Johnson when he was arrested at the hospital.

III. DISCUSSION AND RECOMMENDATION

A. Errors Patent

A review of the record for errors patent reveals none.

B. August's Assignment of Error No.1

In his first assignment of error, defendant August claims that the state failed to produce sufficient evidence to sustain his conviction for first degree murder.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La. R.S. 15:438. La. R.S. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
La. R.S. 14:30 defines first degree murder as the "killing of a human being ... [w]hen the offender has specific intent to kill or inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery." Armed robbery is defined as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." La. R.S. 14:64. Specific intent "is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10.
Elaine Williams testified that the two defendants came to her door and pushed their way inside. Johnson was holding a .357 caliber gun on Marbley. August took Marbley's AK47. August asked Marbley if he had any money. Marbley told them he did not have any money. Williams gave Johnson all the money she had in her purseeleven dollars and was forced to go with defendant Johnson to the ATM two times while under gun-point. When they returned to the house, the defendants told Marbley to call Derrick Tapp and have Tapp come to the apartment. When Tapp arrived the defendants threatened to kill Tapp if he did not tell them were the money was. Tapp gave the defendants the few dollars he had. A short while later, they heard a car horn blow. When Marbley looked outside, he saw his friend, Carl Brown, who was also known as "Superstar." Johnson told Marbley to go outside and have Brown come inside. When Johnson realized he sent Marbley outside by himself, Johnson went after Marbley. Williams heard two to three gunshots. Thereafter, August ran outside. Williams then heard rapid gunfire.
Dr. Paul McGarry, the forensic pathologist who performed an autopsy on the victim, Floyd Marbley, concluded that the cause of death was seven gunshot wounds and multiple fragments wounds in the legs and left wrist. Dr. McGarry opined that the weapon used to shoot the victim was more than two feet from the victim and that the victim's injuries were consistent with a rapid firing weapon.
Officer Kenneth Leary, Jr., a firearms examiner, testified that the fourteen casings found on the scene were part of ammunition *541 used in an AK47, a semi-automatic weapon. The officer further stated that all fourteen casings were fired from the same weapon. Ballistics evidence indicated that fourteen casings from an AK47 were found on the scene. There was sufficient evidence for the jury to conclude that defendant August, who was in possession of an AK47, killed Marbley during the perpetration of an armed robbery. The state produced sufficient evidence to sustain defendant August's conviction for first degree murder.
This assignment is without merit.

C. August's Assignment of Error No.2

In this assignment, the defendant contends the trial court erred when it denied the defendant's motion to sever on April 19, 1995.
La.C.Cr.P. article 704 provides that "[j]ointly indicted defendants shall be tried jointly unless ... [t]he state elects to try them separately; or ... [t]he court, on motion of the defendants, and after contradictory motion with the district attorney, is satisfied that justice requires a severance."
Whether to grant or deny a severance is within the trial court's sound discretion and will not be disturbed absent clear abuse. State v. Prudholm, 446 So.2d 729, 741 (La.1984). The standard for a pre-trial severance is broader because of speculation as to what the evidence will be, whereas the standard for severance after trial commences is stricter because the judge can examine the evidence. State v. Fleming, 574 So.2d 486, 492 (La.App. 4th Cir.1991), writ denied, 592 So.2d 1313 (La.1992). Under the "antagonistic defenses" test a severance is mandated when each defendant intends to blame the other, and a joint trial would require the defendants to defend against the state and each other. State v. Prudholm, 446 So.2d at 741; See La.C.Cr.P. art. 704, comment (c).
When each confession or statement involves both defendants as principals and only the extent of participation is contradictory, the defenses are not antagonistic and the degree of blame each defendant seeks to cast on the other does not warrant a severance. State v. Williams, 416 So.2d 914, 916 (La.1982); State v. Simmons, 381 So.2d 803, 806 (La.1980), cert. denied, Simmons v. Louisiana, 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 498 (1980).
In State v. Simmons, supra, the jointly charged defendants were convicted of first degree murder. The Supreme Court held that although each defendant's statement blamed the other for the shooting, the defenses were not antagonistic because each confession involved the other defendant as a principal. See also State v. Gaskin, 412 So.2d 1007, 1012 (La.1982), where the Court stated in dicta that "(j)ustice does not require a severance where only the extent of participation of each defendant is at issue." A principal is defined as one who is "concerned in the commission of a crime, whether present or absent, and whether [he] ... directly commit[s] the act constituting the offense, aid[s] and abet[s] in its commission, or directly or indirectly counsel[s] or procure[s] another to commit the crime." La. R.S. 14:24.
In the present case, the defendants were charged with first degree murder. First degree murder is defined as the "killing of a human being ... when the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of ... armed robbery." La. R.S. 14:30. Ms. Williams's testimony establishes that both defendants participated in the robbery of Williams, Marbley and Tapp. In addition, both defendants were armed with weapons and threatened to kill Williams, Marbley and Tapp. The evidence adduced at trial indicated that defendant August was armed with the AK47 while defendant Johnson was armed with a .357 caliber gun. Evidence obtained from ballistics and the coroner's office reveal that the victim was killed by an AK47. Thus, the evidence produced by the state suggested that defendant August was the person who actually killed Marbley. However, the evidence supports a finding that both defendants had the intent to kill or inflict great bodily harm to the victim. Williams' testimony revealed that Johnson ran after Marbley and fired several shots from his weapon. Thus, both defendants were principals to the armed robbery and murder of Floyd Marbley. Defendant *542 August's contention that he and defendant Johnson had antagonistic defenses is without merit.
This assignment is without merit.

D. August's Assignment of Error No.3

The defendant further argues that the trial court erred in denying his motion to continue trial as he was prejudiced by the failure to obtain funds to assist in the investigation of the crime. The original trial judge granted the defendant's motion for investigatory funds on June 18, 1993. However, defendant contends no funds were available and/or forthcoming. The defendant did not seek any further assistance from the trial court until the morning of trial when he filed the motion to continue. In fact, the trial judge who conducted the trial was not even aware of the defendant's motion for investigatory funds. Apparently, after the motion was granted, the defendant did not pursue the matter when the case was transferred to the trial judge who conducted the trial. The defendant now argues that he was prejudiced by the lack of funds. He contends he was unable to adequately prepare a defense. Defendant August contends that he was prejudiced by his inability to properly evaluate the crime scene and locate Carl "Superstar" Brown, an alleged eyewitness to the shooting.
With respect to his claim that he was unable to properly evaluate crime scene, the defendant sought to prove that he was not able to have shot the victim within the time element testified to by Williams. Defendant contends that the distance between the area where the victim was found (the intersection of Erato and South Telemachus) and the victim's apartment (the third house from the intersection on South Telemachus) precluded him from reaching the victim within the time frame testified to by Williams. At trial, Williams stated that she heard rapid gunfire immediately after August ran out of the apartment. Defendant suggests that the rapid gunfire occurred right after August left the apartment. However, Williams did not quantify the amount of time which elapsed after August left the apartment and she heard rapid gunfire.
Defendant sought to obtain measurements from the crime scene to support his argument that he could not have reached the crime scene within the time frame of the shooting. Defendant contends he was prejudiced since he was not able to obtain an expert to obtain these measurements. However, the defendant obtained this information during his cross-examination of Officer Randall, the crime scene technician, who investigated the crime scene. The defendant was able to elicit certain measurements of the crime scene, including the distance between the victim and the apartment. Officer Randall testified that the distance from the victim's apartment to the sidewalk was thirty-five feet and three inches. The sidewalk was seven feet and ten inches. The distance from the curb of the sidewalk to the place on Erato Street where the victim was found was forty feet. The bullet casings were found on Erato Street. Officer Randall also testified that a person could not see Erato Street from the victim's apartment. Thus, the defendant was able to obtain the dimensions of the crime scene through the testimony of Officer Randall.
The defendant also suggest that he was unable to investigate and locate a possible eyewitness. Defendant stated he sought to obtain the proper identity of "Superstar" and have him testify at trial. However, Williams' testimony indicated that the defendants knew Superstar's real name. The victim identified Superstar as Carl Brown when Brown appeared at his apartment. In addition, the state had Superstar brought into the courtroom for identification by Williams. At that time, it was revealed that Carl Brown was incarcerated. The defendant could have requested an instanter subpoena for Brown when Brown appeared in court. Defendant did not do so. Thus, defendant's argument that he was prejudiced by the lack of funds is without merit. The evidence of the crime scene which defendant allegedly sought to obtain was produced by Officer Randall at trial. Further, the defendant knew of Carl Brown's identity, and once Brown was brought into the courtroom, defendant *543 could have requested that an instanter subpoena be served upon Brown.
This assignment is without merit.

E. August's Assignment of Error No. 4 and Johnson's Assignment of Error No.1

Both defendants argue that the trial court erred when it refused to suppress evidence of other crimes, specifically, the armed robbery of Lee Lanier. The trial court allowed evidence of Lanier's robbery to be introduced as the court considered the robbery to be part of the res gestae of the robbery and murder of Marbley.
La. C.E. article 404 allows for the introduction of other crimes evidence in certain situations:
B. Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The final phrase replaces the term "res gestae" as provided for in former La. R.S. 15:447-448. Evidence of other crimes is admissible when it is related and intertwined with the charged offense to such an extent that the State could not have accurately presented its case without reference to it. State v. Brewington, 601 So.2d 656 (La.1992). The concomitant other crimes do not affect the defendant's character because they were done, if at all, as parts of a whole; thus, the trier of fact will attribute either all of the criminal conduct to the defendant or none of it. Id. Additionally, because of the close connection in time and location, the defendant is unlikely to be unfairly surprised. Id.
In Brewington, the defendant was the last person seen with the victim prior to her death. The State presented testimony from a witness who saw the defendant with cocaine and with a gun tucked into his waistband. This sighting occurred three hours after the victim was last seen with the defendant and less than two hours before her death. The victim was killed by a gunshot, and she had cocaine in her system. In reviewing the appellate court's reversal of the defendant's conviction, the Court found the testimony of the gun and cocaine in the defendant's possession "formed an inseparable part of the state's substantial circumstantial evidence linking [the defendant] to the shooting" and was "an integral part of the act or transaction that was the subject of the present proceeding," and thus was admissible. Id. at 657.
In State v. McGuire, 577 So.2d 1120, 1122-23 (La.App. 1st Cir.), writ denied, 581 So.2d 704 (La.1991), the court held that evidence of the murder defendant's escape from prison in another state twelve to nineteen hours before meeting the victim was admissible as an integral part of the subsequent murder and robbery of the victim. Likewise, the defendant in State v. Edouard, 512 So.2d 579, 581-83 (La.App. 3d Cir.1987), was charged with and convicted of burglary of an inhabited dwelling. The only items stolen were the victim's bank book and some bank documents. The defendant was apprehended two days after the burglary when he attempted to cash a check drawn on the victim's name. The defendant was found to be in possession of the bank documents. The court allowed the officers to testify about the facts of the defendant's apprehension, noting that the evidence constituted part of the res gestae of the crime.
In the present case, the Lanier robbery occurred less than one hour before the defendants telephoned Williams looking for Marbley. Mr. Lanier identified defendant August as one of the perpetrators who stole his vehicle, black Cascio watch and money. The defendants used Lanier's vehicle in their scheme to rob Marbley. Williams testified *544 that defendant Johnson acknowledged that he and defendant August had driven to Williams' house in the Tercel. Johnson told Williams that they used the Tercel because they did not want Marbley to recognize them. Lanier's vehicle was found on the murder scene. Johnson's fingerprints were found in the vehicle. In addition, Johnson was wearing Lanier's black Cascio watch when he was arrested at Hotel Dieu Hospital. Although there was a close connexity in time and location between Lanier's robbery and the robbery and murder of Marbley, Lanier's robbery was not an integral part of present offense. The state did not need to introduce evidence of Lanier's robbery to sufficiently prove its case against the defendants. The trial court erred when it denied the defendants' motions to exclude evidence of Lanier's robbery.
However, the error is harmless. In State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94, the Supreme Court held that the introduction of inadmissible other crimes evidence results in a trial error which is subject to harmless error analysis. In order for an error to be harmless, it must be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). The guilty verdict actually rendered in the trial must be unattributable to the error. Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). Evidence of Lanier's robbery did not contribute to the defendants' convictions in the present case. In fact, Lanier's testimony did not add any significant information to the case. Elaine Williams positively identified both defendants as the two perpetrators who entered her home and robbed herself and the victim. She further stated that both defendants were armed with weapons. Defendant Johnson had a .357 caliber gun and defendant August took the victim's AK47. Williams further testified the two defendants ran after the victim after he left the apartment. She heard rapid gunfire after defendant August left the apartment. The coroner testified the victim's injuries were inflicted by rapid firing weapon. Ballistics evidence revealed that AK47 casings were found on the crime scene. The guilty verdicts in the present case were clearly attributable to the testimony of Elaine Williams, the coroner, and the ballistics expert.
These assignments are without merit.

F. August's Assignment of Error No.5

Defendant August also suggests that the cumulative effect of these errors caused him prejudice and deprived him of a fair trial. As the above alleged errors have been found to be without merit, the defendant has not sustained any prejudice.
This assignment is without merit.

G. Johnson's Assignment of Error No.2

Defendant Johnson argues that the trial court erred when it denied his motion for new trial and/or motion for post judgment verdict of acquittal. The defendant contends that he was entitled either to a new trial or verdict of acquittal as the state failed to produce sufficient evidence to sustain his conviction for first degree murder.
La.C.Cr.P. article 821 provides that "[a] post verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." The trial court, on the motion of the defendant, is required to grant a new trial whenever "[t]he verdict is contrary to the law and the evidence." La.C.Cr.P. article 851.
Elaine Williams testified the defendants pushed their way into her apartment. Johnson was armed with a .357 caliber gun while August took Marbley's AK47. The defendants demanded money from them. Marbley told them he did not have any money. Williams then gave Johnson all the money she had in her purseeleven dollars and went with defendant Johnson to the ATM twice, but was unable to obtain any money as there were insufficient funds in her account. When she and Johnson returned to the house, the defendants told Marbley to call Derrick Tapp and have Tapp come to the apartment. When Tapp arrived at the apartment the defendants threatened to kill him if he did not tell them were the money was. *545 Tapp gave the defendants the few dollars he had. A short while later, they heard a car horn blow. When Marbley looked outside, he saw his friend, Carl Brown, who was also known as "Superstar." Johnson told Marbley to go outside and have Brown come inside. When Johnson realized he sent Marbley outside by himself, Johnson went after Marbley. Williams heard two to three gunshots. Thereafter, August ran outside. Williams then heard rapid gunfire.
Williams' testimony provides sufficient evidence to support Johnson's conviction for first degree murder. Johnson participated in the robberies of Williams, Marbley and Tapp. He held a weapon on the victims and demanded money from them. Johnson took Williams to her bank in order to obtain additional cash. Johnson's actions also indicate he had the specific intent to kill or inflict great bodily harm on Marbley and was a principal in the murder of Marbley. Both Johnson and August threatened to kill Marbley and Williams. Johnson was still armed with the gun when he ran outside after Marbley. The jury could infer from such testimony that the two to three shots Williams heard next came from Johnson's weapon. In addition, testimony from Dr. McGarry and Dr. Martin Hale, the emergency room physician who treated Johnson, suggests that Johnson and the victim may have scuffled before Johnson fired his weapon. Dr. McGarry testified that the victim had abrasions and contusions which would have been consistent with fighting. Likewise, Dr. Hale stated that in addition to the gunshot wound to the leg, Johnson also sustained abrasions and contusions which were suggestive of fighting. Defendant Johnson's actions clearly reveal an active participation in the robbery and murder of Floyd Marbley.
This assignment is without merit.
The defendants' convictions and sentences are affirmed.
AFFIRMED.
PLOTKIN, J., concurs.
PLOTKIN, Judge, concurring.
I agree with the majority resolution of this case, however, I write separately to underscore the importance of providing indigent defendants with investigatory funds.
Often times, attorneys for indigent defendants seek assistance from experts to adequately prepare their defenses and conscientiously represent their clients. It is the duty of these attorneys to zealously represent their clients' needs which involves seeking investigator funds. Our jurisprudence firmly establishes that such funds should be dispensed forthwith upon a proper showing of necessity. State v. Craig, 93-2515 (La. 5/23/94), 637 So.2d 437, 442. Here, counsel sought funds for an expert to assess the crime scene arguing that it was not possible for defendant to have taken part in the shooting based on the actual lay-out of the neighborhood in relation to where the key witness placed the defendant. In this case, such funding was especially important because defendant was on trial for his life. The trial court granted defendant's motion for investigatory funds early on in the proceedings. However, defendant's attorney apparently did not seek compliance with the order until the day scheduled for the trial to begin which was almost three years later.[1]
The State did call an expert to testify as to the logistics of the offense. This witness adequately presented photographic documentation representing the crime scene. This is essentially what the defense intended to do had they had the funds for an expert. The defendant had a reasonable and fair opportunity to cross-examine this witness regarding the locale of the offense. Therefore, I believe the lack of funding for this type of expert in this case did not prejudice the defendant, however, I emphatically believe that this case should not be considered a condonation of the failure of the system to provide the necessary funding for indigent defendants. Rather, concerning investigatory funds, it is the specific facts and circumstances of this case that distinguish it and *546 allow this Court to affirm defendant's conviction and sentence.
NOTES
[1] The record reflects that counsel for the defendant did seek and obtain funds for the use of an expert during the sentencing phase of the trial to present mitigation evidence.