773 So.2d 871 (2000)
STATE of Louisiana
v.
Perry CROWELL and Joseph Augustine.
No. 99-KA-2238.
Court of Appeal of Louisiana, Fourth Circuit.
November 21, 2000.
Rehearing Denied January 12, 2001.
*874 Harry F. Connick, District Attorney of Orleans Parish, Holli Herrle-Castillo, Assistant District Attorney of Orleans Parish, Charles E.F. Heuer, Assistant District Attorney, New Orleans, LA, Counsel For Plaintiff/Appellee.
Pamela S. Moran, Louisiana Appellate Project, New Orleans, LA, Counsel For Defendant/Appellant (Perry Crowell).
Yvonne Chalker, Louisiana Appellate Project, New Orleans, Louisiana, Counsel For Defendant/Appellant (Joseph Augustine).
Court composed of Judge PATRICIA RIVET MURRAY, Judge DENNIS R. BAGNERIS Sr., Judge MAX N. TOBIAS, Jr.
*875 MURRAY, Judge.
Joseph Augustine appeals his convictions for distribution of heroin and possession of heroin with the intent to distribute, and his sentence of life imprisonment at hard labor without benefit of probation or suspension of sentence on each count. He claims that the trial court erred in not quashing the search warrant because it did not establish probable cause to search. Further, he claims that there was insufficient evidence to support either of his convictions.
Perry Crowell appeals his conviction for possession of heroin, and his sentence of life imprisonment at hard labor without benefit of probation or suspension of sentence as a third felony offender. He claims that the trial court erred in not severing his trial from that of his co-defendant, in adjudicating him as a third felony offender, and in imposing an unconstitutionally excessive sentence. Additionally, he claims that he received ineffective assistance of counsel during trial and sentencing.
For the following reasons, we affirm the convictions and sentences of both defendants.

STATEMENT OF CASE:
Defendant Joseph Augustine was indicted on charges of distribution of heroin and possession with the intent to distribute heroin in violation of La.Rev.Stat. 40:966. Defendant Perry Crowell was indicted on a charge of possession of heroin in violation of La.Rev.Stat. 40:966.[1] A jury trial on September 15, 1998 resulted in a mistrial. After a second jury trial Mr. Augustine was found guilty as charged on both counts, and Mr. Crowell was found guilty as charged. The trial court sentenced Mr. Augustine to life imprisonment at hard labor without benefit of probation or suspension of sentence on each count, and subsequently denied his motion to reconsider sentence. Mr. Crowell was sentenced initially to ten years at hard labor, and a motion to reconsider sentence was denied. The State subsequently filed a multiple bill of information, and after hearing, the trial court adjudicated Mr. Crowell to be a third felony offender, vacated the prior sentence, and sentenced him to life imprisonment at hard labor without benefit of probation or suspension of sentence.

STATEMENT OF FACT:
Detective Dennis Bush set up a surveillance of 513 South Rocheblave Street on June 30, 1997, after being informed of alleged narcotics trafficking at the residence. On that date, the officer observed three narcotics transactions at the residence wherein Joseph Augustine exchanged a small object for currency. Based upon these observations, Detective Bush believed that narcotics were being stored and sold from the residence, and obtained a search warrant. The next day, Detective Bush again set up a surveillance of the residence. He observed a blue Mazda truck, occupied by a white female driver and a white male passenger, stop in front of the residence. Mr. Crowell was the male passenger. Within a couple of minutes, Mr. Augustine came out of the residence and approached the passenger side of the vehicle where the two men engaged in a conversation. Shortly thereafter, Mr. Augustine yelled towards the residence, and an elderly black man, later identified as Samuel Adolph, exited the residence, approached Mr. Augustine, and handed him a small blue and red matchbox. Mr. Augustine opened the box, sorted through it, and removed two small silver foil objects that he handed to Mr. Crowell, who handed Mr. Augustine currency. *876 The couple in the vehicle left, and Mr. Augustine went inside the residence. Detective Bush informed the take down team of the transaction, instructed them to stop the vehicle, and terminated the surveillance. The officer then waited for the other officers to return before executing the search warrant.
When the officers entered the residence, Mr. Augustine was standing near the door, Mr. Adolph was lying on the bed, and another man, Jerald Berryhill, was standing in the kitchen/bathroom area. During the search, Detective Powell found a blue and red matchbox in the pocket of a shirt hanging in a closet. The matchbox contained twelve foils of heroin. Mr. Augustine had $81 in currency and $5 in food stamps on his person. Messrs. Augustine and Adolph were arrested for possession with the intent to distribute heroin and distribution of heroin. The other man on the premises, Mr. Berryhill, was arrested for possession of cocaine. Detective Bush testified that the only person arrested that day that admitted to living at 513 South Rocheblave was Samuel Adolph. The matchbox observed during the surveillance was found in a shirt pocket in a closet. It was the only blue and red matchbox found during the search. There were no drugs found on Mr. Augustine.
Detective Arthur Powell testified that he and other members of the take down team followed the vehicle described by Detective Bush. They stopped the vehicle at the intersection of Tulane and Claiborne Avenues. Detective Powell approached the driver's side of the vehicle while his partner, Officer Ronald White, went to the passenger side. The officers observed Mr. Crowell hand the two tin foil objects to the female driver, later identified as Brenda Williamson. Ms. Williamson attempted to put the two tin foil objects in her mouth, however, Detective Powell grabbed her hand and retrieved the two tin foil packets that contained what appeared to be heroin. Mr. Crowell and Ms. Williamson were arrested for possession of heroin and taken to the police station. Detective Powell and the other members of the take down team then returned to the residence on South Rocheblave and assisted in the execution of the search warrant. Detective Powell testified that he found a blue and red matchbox inside a pocket of a shirt hanging in the closet, with twelve tin foil packets of heroin in it. The "closet" had no door, and was merely a recess in the wall.
William Giblin, a criminalist with the New Orleans Police Department Crime Lab, testified that he tested the two tin foil packets taken from Mr. Crowell and the twelve tin foil packets seized from the residence on South Rocheblave. All the packets tested positive for heroin. He explained that the envelope containing the evidence stated that there were 13 tin foil packets inside. However, after weighing the evidence, the gram weight matched what was indicated on the envelope.

ERRORS PATENT:
A review of the record for errors patent reveals that the docket master and minute entries indicate that Mr. Augustine was arraigned on April 14, 1998, but are silent as to the plea entered. Failure to arraign the defendant or the fact that he did not plead is waived if he defendant enters upon the trial without objecting thereto. In that case it is considered as if he had pleaded not guilty. La.Code Crim. Proc. art. 555; State v. Scott, 97-0028, p. 6 (La.App. 4 Cir. 3/18/98), 709 So.2d 339, 342. The record does not reflect that any objections regarding arraignment or plea were made prior to trial. Therefore, any irregularity with regard to Mr. Augustine's arraignment was waived.
The record also reveals an error in Mr. Crowell's sentence under the multiple offender statute. After adjudicating him to be a third felony offender, the trial court sentenced Mr. Crowell to life imprisonment at hard labor without benefit of probation or suspension of sentence. However, La.Rev.Stat. 15:529.1 provides when an offender's "third felony or either *877 of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation or suspension of sentence." Thus, Mr. Crowell's sentence is illegally lenient. This Court will not correct errors favorable to a defendant where the issue is not raised by the State. State v. Fraser, 484 So.2d 122 (La.1986).

DISCUSSION:

MR. CROWELL'S PRO SE ASSIGNMENT OF ERROR NUMBER 1:
In his first pro se assignment of error, Mr. Crowell argues that the trial court erred when it denied his motion to sever defendants.
Jointly indicted defendants shall be tried jointly unless the State elects to try them separately or the trial court determines, on the defendant's motion and after a contradictory hearing, that justice requires a severance. La.Code Crim. Proc. art. 704. The defendant must show by convincing evidence that a severance is warranted. State v. Tate, 95-0929 (La. App. 4 Cir. 6/7/95), 657 So.2d 567, writ denied, 95-1726 (La.9/1/95), 658 So.2d 1262. The decision on whether to grant or deny a severance is within the sound discretion of the trial court, and the trial court's decision will not be disturbed on appeal absent a clear abuse of discretion. State v. August, 96-2777 (La.App. 4 Cir. 9/16/98), 719 So.2d 536, writ denied, 98-2523 (La.1/5/99), 736 So.2d 206. The standard for a severance prior to trial is broader because of speculation as to what the evidence will be, whereas the standard for a severance after trial is stricter because the trial court can examine the evidence. State v. Burton, 96-1248 (La.App. 4 Cir. 12/9/98), 727 So.2d 518, writ denied, State v. Hawthorne, 99-0037 (La.4/30/99), 741 So.2d 11.
Under the antagonistic defenses test, a severance is required when each defendant intends to blame the other because a joint trial would require the defendants to defend not only against the State, but also against each other. State v. Burton, supra, 96-1248 at p. 11, 727 So.2d at 523. This rule also applies to the situation where only one defendant blames the other. State v. McGraw, 366 So.2d 1278 (La.1978). But when each confession or statement involves both defendants as principals and only the extent of their participation is contradictory, the defenses are not antagonistic; and, the degree of blame each defendant seeks to cast on the other defendant does not warrant a severance. State v. August, supra, 96-2777 at p. 8, 719 So.2d at 541.
In the present case, Mr. Crowell and Mr. Augustine were charged with different offenses. Mr. Augustine was charged with distribution of heroin and possession with the intent to distribute heroin. Mr. Crowell was charged with possession of heroin. Mr. Augustine was the seller and Mr. Crowell was the purchaser. There was no possibility of antagonistic defenses. Therefore, the trial court did not err when it denied Mr. Crowell's motion to sever.

MR. CROWELL'S PRO SE ASSIGNMENT OF ERROR NUMBER 2, AND COUNSEL'S ASSIGNMENT OF ERROR NUMBER 2:
In these assignments, Mr. Crowell contends that he received ineffective assistance of counsel at trial and at the multiple bill hearing.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 *878 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). The defendant must show that counsel's performance was deficient and that the deficiency prejudiced him. Counsel's performance is ineffective when it can be shown that he made errors so serious that he was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. Counsel's deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This court has recognized that if an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir. 1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." State v. Brooks, 505 So.2d 714, 724 (La.1987), cert. denied, Brooks v. Louisiana, 484 U.S. 947, 108 S.Ct. 337, 98 L.Ed.2d 363 (1987).
Mr. Crowell's appellate counsel argues that Mr. Crowell received ineffective assistance of counsel at the multiple bill hearing as trial counsel failed to file motions to quash the multiple bill and to reconsider sentence. Both motions are necessary to preserve issues for appeal. A review of the record reveals that trial counsel did not file such motions. Therefore, it is necessary to review Mr. Crowell's multiple bill adjudication and sentence to determine if trial counsel's performance was deficient and prejudiced the defendant.
Louisiana Revised Statute 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof. In State v. Shelton, 621 So.2d 769, 779-780 (La.1993), the Supreme Court stated:
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between the judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self-incrimination, and *879 his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulate waiver of the three Boykin rights. (Footnotes omitted).
In the case at bar, the State alleged that Mr. Crowell was a third felony offender. It relied upon two predicate offenses of theft between $100 and $500 and obtaining drugs with a false prescription. In case number 356-879 from Orleans Parish, Mr. Crowell pled guilty to obtaining drugs with a false prescription on April 2, 1993. The State introduced the minute entry of April 2, 1993, and a waiver of rights form. Both documents indicate that Mr. Crowell was represented by counsel and advised of his rights prior to pleading guilty. He initialed and signed the waiver of rights form. Mr. Crowell's trial counsel also signed the form. On December 13, 1990, Mr. Crowell pled guilty to theft between $100 and $500 in case number 90-3833 from Jefferson Parish. The State introduced the waiver of rights form that was initialed and signed by Mr. Crowell. Trial counsel also signed the guilty plea form that indicated Mr. Crowell was represented by counsel and was informed of his rights prior to pleading guilty. These documents were sufficient to prove that the guilty pleas were knowingly and voluntarily made. The State met its burden of proof. As Mr. Crowell has not produced any evidence to suggest the existence of any procedural irregularities, he has not shown that his trial counsel's performance was deficient when he failed to file a motion to quash the multiple bill of information.
After adjudicating Mr. Crowell to be a third felony offender, the trial court sentenced him to the mandatory life sentence. Mr. Crowell contends that his counsel should have filed a motion to reconsider sentence in order to allow for appellate review of the sentence.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment."
A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Caston, 477 So.2d 868 (La. App. 4 Cir.1985). Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.Code Crim. Proc. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Soco, 441 So.2d 719 (La.1983); State v. Quebedeaux, 424 So.2d 1009 (La. 1982). If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case, keeping in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, supra; State v. Guajardo, 428 So.2d 468 (La.1983).
The trial court sentenced Mr. Crowell to life imprisonment as a third felony offender pursuant to La.Rev.Stat. 15:529.1(A)(1)(b)(ii) which provides:
If the third felony or either of the two prior felonies is a felony defined as crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without *880 benefit of parole, probation, or suspension of sentence.
Although a sentence is within the statutory limits, the sentence may still violate a defendant's constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
The minimum sentences imposed on multiple offenders by the Habitual Offender Law are presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. The defendant bears the burden of rebutting the presumption that the mandatory minimum sentence is constitutional. State v. Short, 96-2780 (La.App. 4 Cir. 11/18/98), 725 So.2d 23, writ denied, 99-0198 (La.5/14/99), 745 So.2d 11. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it that would rebut the presumption of constitutionality. State v. Johnson, 97-1906 at p. 7, 709 So.2d at 676.
Mr. Crowell has not produced any evidence to suggest that the sentence imposed was unconstitutionally excessive. Therefore, he has not shown that he was prejudiced by trial counsel's failure to file a motion to reconsider sentence.
In his pro se brief, Mr. Crowell contends that his trial counsel was ineffective in (1) failing to introduce Brenda Williamson's guilty plea into evidence, (2) failing to object to the State's reference to other crimes evidence during closing argument, and (3) failing to object to the State's reference to testimony not in evidence during closing argument.
Mr. Crowell suggests that Williamson's guilty plea should have been introduced into evidence. He calls it her "statement of guilt" indicating that she acknowledged her possession of the heroin. Ms. Williamson did not give a statement to the officers, and her guilty plea only indicates that she pled guilty to the charge of attempted possession of heroin. Trial counsel had no basis to attempt to introduce the guilty plea into evidence.
Mr. Crowell also contends that his trial counsel erred when he failed to object to the State's comments during closing arguments about the testimony of Officers Lanier and Davilier. Our review of the record reveals that the State did not make any comments about testimony from these two officers, nor did the State refer to other crimes evidence during its closing argument. The record does not support these arguments by Mr. Crowell.

MR. CROWELL'S PRO SE ASSIGNMENT OF ERROR NUMBER 3 AND COUNSEL'S ASSIGNMENT OF ERROR NUMBER 1:
Mr. Crowell further suggests that the trial court erred when it adjudicated him a third felony offender.
In State v. Cossee, 95-2218 (La.App. 4 Cir. 7/24/96), 678 So.2d 72, this Court held that the failure to file a written response to the multiple bill as required by La.Rev. Stat. 15:529.1(D)(1)(b) precluded appellate review of the defendant's claim that the documentary evidence was insufficient to support one of the prior convictions set forth in the multiple bill. As Mr. Crowell failed to file such a motion or orally object to the adjudication, appellate review of this issue would ordinarily be precluded. However, the issue was reviewed above in Mr. Crowell's assignment of ineffective assistance of counsel at the multiple bill hearing.

MR. CROWELL'S PRO SE ASSIGNMENT OF ERROR NUMBER 4 AND COUNSEL'S ASSIGNMENT OF ERROR NUMBER 3:
Lastly, Mr. Crowell contends that the trial court imposed an unconstitutionally *881 excessive sentence. He suggests that the mandatory life sentence imposed after his adjudication as a third felony offender is excessive. This issue has not been preserved for appeal as a motion to reconsider sentence was not filed. La.Code Crim. Proc. art. 881.1. However, this issue has been reviewed above under Mr. Crowell's assignment of ineffective assistance of counsel at the multiple bill hearing.

MR. AUGUSTINE'S ASSIGNMENT OF ERROR NUMBER 1:
Mr. Augustine argues that the State failed to produce sufficient evidence to support his conviction for possession with the intent to distribute cocaine.
When assessing the sufficiency of evidence to support a conviction, the appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Jacobs, 504 So.2d 817 (La.1987).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). The elements must be proven such that every reasonable hypothesis of innocence is excluded. La.Rev. Stat. 15:438. La.Rev.Stat. 15:438 is not a separate test from Jackson v. Virginia, supra, but rather is an evidentiary guideline to facilitate appellate review of whether a rational juror could have found a defendant guilty beyond a reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984). All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, supra.
To support the conviction for possession with intent to distribute heroin, the State must prove the defendant "knowingly" and "intentionally" possessed the drug with the "intent to distribute." State v. Williams, 594 So.2d 476, 478 (La.App. 4 Cir.1992). It is not necessary that the State prove that the defendant had actual physical possession of the narcotics; proof of constructive possession is sufficient to support a conviction. State v. Trahan, 425 So.2d 1222 (La.1983); State v. Dickerson, 538 So.2d 1063 (La.App. 4 Cir.1989). Neither the mere presence of the defendant in an area where drugs have been found nor the mere fact that he knows the person in actual possession is sufficient to prove constructive possession. State v. Bell, 566 So.2d 959 (La.1990). Nevertheless, a person found in the area of the contraband is considered in constructive possession if it is subject to his dominion and control. Trahan, supra. The elements of knowledge and intent are states of mind which need not be proved as facts, but which may be inferred from the circumstances. State v. Reaux, 539 So.2d 105 (La.App. 4 Cir. 1989). The finder of fact may draw reasonable inferences to support these contentions based on the evidence presented. Id.
The second element of the statute, specific intent to distribute, may be established by proving circumstances surrounding defendant's possession which give rise to a reasonable inference of intent to distribute. Dickerson, supra. The factual circumstances from which such intent can be inferred include: previous distribution by defendant; the presence of paraphernalia for distribution; possession of an amount sufficient to create a presumption of intent to distribute; and, packaging in a form usually associated with distribution rather than personal use. State v. Hechavarria, 575 So.2d 444 (La. App. 4 Cir.1991).
In the case at bar, Detective Bush testified that he saw Mr. Augustine engage in three narcotics transactions on June 30, *882 1998. The next day, the officer observed Mr. Augustine engage in a narcotics transaction with Mr. Crowell. Detective Bush testified that he saw Mr. Adolph bring Mr. Augustine a red and blue matchbox. Mr. Augustine opened the matchbox, sorted through the box, took two tin foil packets from the box and gave them to Mr. Crowell, who then handed him currency. The red and blue matchbox was found in the apartment during the search in the pocket of a shirt hanging in a closet a few feet from where Mr. Augustine was standing. No other matchbox was found in the residence. Such evidence is sufficient to sustain the conviction for possession of heroin with the intent to distribute.
Mr. Augustine also points out several discrepancies between the police report, the evidence sheet and the officers' testimony. Specifically, Detective Powell testified that he arrested Mr. Crowell at 11 a.m., the evidence sheet states that the arrest was made at 11 a.m., but the police report states that the arrest was made at 12:25 p.m. Also, the police report states that the transactions of June 30 originated on the front porch of the residence where Mr. Augustine was sitting, but Detective Bush testified at trial that each purchaser knocked on the door of the residence and that the transaction took place in the doorway. Mr. Augustine also points outs that the police report describes Mr. Augustine as an elderly black male, but that Mr. Augustine was only 52 years old at the time of the offense. Lastly, no rational trier of fact could have concluded that 15 foils of heroin could fit in a matchbox. In sum, Mr. Augustine argues that the crime of which he was convicted could not have occurred as Detective Bush testified.
The discrepancies noted by Mr. Augustine have nothing to do with the elements of the crimes of possession of heroin with the intent to distribute or distribution of heroin. As noted above, Detective Bush testified that he saw three hand-to-hand transactions between Mr. Augustine and different buyers on June 30, and witnessed another hand to hand transaction between Mr. Augustine and Mr. Crowell on July 1.
Witness credibility and conflicting testimony concerning factual matters are questions which go to the weight of the evidence, and not the sufficiency. State v. Jones, 537 So.2d 1244, 1249 (La. App. 4 Cir.1989). A determination of the weight of the evidence is a question of fact, which rests solely with the trier of fact who may reject or accept, in whole or in part, the testimony of a witness. State v. Silman, 95-0154, p. 12 (La.11/27/95), 663 So.2d 27, 35.

MR. AUGUSTINE'S ASSIGMENT OF ERROR NUMBER 2:
Mr. Augustine also suggests that the application submitted in support of the application for the search warrant did not establish probable cause. He suggests that the affidavit did not supply sufficient information about the "source" of the tip received by the officer. In the affidavit, the officer stated:
On Monday, June 30th, 1997, Narcotics and Drug Abuse Detective Dennis Bush received information concerning the illegal trafficking of Narcotics within the Parish of Orleans. The information concerned the retail distribution of Heroin from 513 S. Rocheblave St. According to this source, a N/M subject approximately 45 years of age who goes by the name of "Joe" was utilizing the aforementioned location as a retail outlet for Heroin.
On June 30th, 1997, Detectives Bush and Powell conducted a surveillance of 513 S. Rocheblave St. The investigating detective was in an undercover vehicle and concealed himself near the intersection of Tulane Ave. and N. Rocheblave St., with an unobstructed view of the residence in question.
On June 30th, 1997, at approximately 7:55 a.m., the investigating detectives observed a N/M, clad in black jean shorts and a white tank top approach *883 513 S. Rocheblave St. The black male met up with a slim black male about 45 yrs old, clad in a black shirt, black pants and a white baseball cap, who was sitting on the steps in front of 513 S. Rocheblave St. A brief conversation ensued, followed by the visiting male handing the male with the cap what appeared to be an unknown amount of U.S. currency. The male with the white cap, accepted the currency and then went inside of 513 S. Rocheblave St. He returned about two minutes later and handed the visiting male a small package. The visiting male briefly examined the package and then proceeded east on S. Rocheblave St., out of the detective's view.
At 8:30 a.m., the detectives observed a black female clad in a green shirt and blue shorts approach the same male (with the cap) who was sitting on the steps in front of 513 S. Rocheblave St. She immediately handed him what appeared to be an unknown amount of U.S. currency at which time he re-entered the residence. The male then returned about a minute later and handed the female a small package. She briefly examined the package and then proceeded east on S. Rocheblave St., out of the detective's view.
At 9:19 a.m., the detectives observed a black female clad in a grey shirt and blue jean skirt, approach the same black male who was sitting on the steps of 513 S. Rocheblave St. The female immediately handed the black male what appeared to be an unknown amount of U.S. currency. The black male then re-entered the residence, returned about a minute later and handed a small package to the female. The female then hurriedly walked west on S. Rocheblave St., then riverbound on Tulane Ave.
In State v. Page, 95-2401, p. 12 (La.App. 4 Cir. 8/21/96), 680 So.2d 700, 709-710, writ denied, 96-2352 (La.2/21/97), 688 So.2d 522, this Court noted the standard for determining probable cause to support the issuance of a search warrant:
Louisiana Code of Criminal Procedure Article 162 provides that a search warrant may be issued "only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for the issuance of the warrant." In State v. Duncan, 420 So.2d 1105, 1108 (La.1982) our Supreme Court held that probable cause exists when:
the facts and circumstances within the affiant's knowledge, and those of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that evidence or contraband may be found at the place to be searched. (citations omitted) See also, State v. Roebuck, 530 So.2d 1242 (La.App. 4th Cir.1988), writ den. 531 So.2d 764 (La.1988).
The facts which form the basis for probable cause to issue a search warrant must be contained "within the four corners" of the affidavit. Duncan, supra at 1108. A magistrate must be given enough information to make an independent judgment that probable cause exists for the issuance of the warrant. State v. Manso, 449 So.2d 480, 482 (La. 1984), cert. denied, Manso v. Louisiana, 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984). The reviewing Court must determine whether the "totality of circumstances" set forth in the affidavit is sufficient to allow the magistrate to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him that there is a reasonable probability that contraband will be found. The duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. Manso, supra at 482.
See also State v. Hoffpauir, 99-0128 (La. App. 4 Cir. 4/7/99), 731 So.2d 1026; State v. Bradford, 98-1428 (La.App. 4 Cir. 12/9/98), 729 So.2d 1049.
*884 The circumstances of this case are similar to State v. Martin, 97-2904 (La.App. 4 Cir. 2/24/99), 730 So.2d 1029, writ denied, 99-0874 (La.10/1/99), 747 So.2d 1136. There, the officers received a call concerning drug activity from a certain address. The tip included a detailed description of the person selling the drugs and indicated the informant had seen ongoing selling activity from the residence. The officers set up a surveillance and observed several people entering and quickly leaving the residence, and, in one instance, the visitor was seen pulling money out of her pocket prior to entering. This Court found these circumstances were sufficient to support the issuance of the search warrant for the residence.
In the present case, the officer's surveillance and observation of three separate narcotics transactions corroborated the informant's tip. Such circumstances were sufficient to support the issuance of the search warrant. The trial court did not err when it denied Mr. Augustine's motion to suppress evidence.

CONCLUSION:
Accordingly, Joseph Augustine's convictions and sentences are affirmed, and Perry Crowell's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Co-defendant Samuel Adolph was also indicted for distribution of heroin and possession with the intent to distribute heroin. Apparently, Adolph was released on bond after his arrest and never located. Brenda Williamson was indicted for possession of heroin. She pled guilty to an amended charge of attempted possession of heroin on November 11, 1998. The trial court sentenced her to time served without benefit of probation or suspension of sentence.