SANDRA CABRINA JENKINS, Judge.
| defendant was convicted by a unanimous twelve member jury of the attempted second degree murder of Mr. Daniel Leban. Upon his conviction, the State filed a multiple offender bill charging defendant as a fourth felony offender. Having adjudicated defendant as a fourth felony offender, the trial court sentenced defendant to life imprisonment without the benefit of probation or suspension of sentence.
Defendant appeals his conviction and sentence, and he asserts seven assignments of error.[1] After reviewing defendant’s assignments of error in light of the entire record, we find no merit to any of defendant’s arguments on appeal. For all of the following reasons, we affirm defendant’s conviction for attempted second degree murder, his adjudication as a fourth felony offender, and his sentence to life imprisonment. Before discussing our reasons to affirm, we present the facts relevant to this appeal.
| STATEMENT OF FACTS
Defendant was convicted of the attempted second degree murder of Mr. Daniel Leban, which occurred on February 15, 2008 near the intersection of McCain Street and Old Gentilly Road in New Orleans.
*778 At that time, Leban lived at 3601 McCain Street, on a dead end block under the Interstate 10 high rise. Leban lived alone in a tent next to his blighted house on a side of the dead end street with only an auto shop garage next to his property and a few trailers across McCain Street. A.J. Messina ran the auto shop garage but didn’t live there. As a result, Leban kept watch on his block and the auto shop.
On February 14, 2008, Leban observed defendant drive down the street to the auto shop and begin speaking with A.J. Messina. Leban learned that A.J. had agreed to paint defendant’s truck. The next day, February 15, 2008, around 2 p.m., Leban saw defendant bring a truck to the shop. Leban approached defendant and A.J., and told them that he would prefer that the truck be parked in the auto shop garage because he did not want to look after the truck parked on his street. Defendant agreed to have his truck placed inside the auto shop garage, and left in a tan vehicle with an unidentified person.
At 6 p.m. that evening, Leban observed defendant come back to the auto shop in a tan vehicle, but A.J. was not there. Defendant approached Leban asking about A.J. and wanting to contact him. Defendant asked to use Leban’s cell phone to call A.J. When Leban handed it to him, defendant took the phone and drove away with it. Leban called 911 to report that his cell phone had been stolen. He told the 911 operator that the man who stole his phone had left his truck at the garage next door to Leban’s house earlier that day. Leban then asked for officers to come out to the scene.
| ^Responding to the dispatch call of a disturbance, National Guard Military Policeman Trevor Abney and his partner, Sgt. Litton, arrived on the scene at Old Gentilly Road and McCain Street to speak with Leban. Ofc. Abney and Sgt. Litton were on assignment to assist the NOPD with patrols and calls for service. When they arrived, Ofc. Abney spoke with Le-ban, and learned about the stolen cell phone. Ofc. Abney then notified the NOPD that the complainant, Leban, wanted to fill out a police report at the station the next day. At that point, Ofc. Abney and his partner left the scene.
Later the same evening, Leban was sitting in his car parked on McCain Street when defendant returned, and approached Leban’s car. Defendant pointed a gun at Leban, and told him to go get the truck out of the garage or else defendant would shoot him. Leban walked with defendant up to the garage, but then turned and started to run away. As he was running, Leban heard gunshots, one of which hit him, and he fell face down on the ground.
Mr. Oliver Harrison, who lived in a trailer on McCain Street, called 911 to report gunfire, and that a man was lying in the street. Ofc. Abney and his partner heard the NOPD dispatch call of aggravated battery by firearm at the same location they responded to earlier that day. Ofc. Abney and his partner responded to the call, and, upon arriving on the scene, the officers found Leban lying in the street with a gunshot wound to his back. Ofc. Abney asked Leban if the same man who had stolen his cell phone had shot him. Leban indicated to Ofc. Abney that it was the same person.
NOPD Det. James Shepak and Det. John Duzac arrived on the scene to investigate the shooting. In the course of their investigation, they learned that Leban identified the shooter as a man named “Rob” whose truck was being kept at |4the auto shop. A.J. Messina arrived on the scene and showed the detectives where the truck was being kept. Det. Shepak testified that Det. Duzac located a piece of paper on the ground next to the truck, and *779 identified it as a letter from FEMA addressed to Robert Diggins (“FEMA letter”). Based on the information gathered from Leban, Messina, and the FEMA letter, the detectives developed defendant as a suspect in the shooting. Det. Shepak then compiled a photographic lineup that included a picture of defendant and five fill-in pictures.
Det. Shepak and Sgt. Chris Billiot then went to University Medical Center to conduct the photographic lineup with Leban. The detectives conferred with Dr. Mark Dominguez, the trauma surgeon attending to Leban, who informed them that Leban was alert, responsive, had not yet been administered any medications, and was able to talk with the detectives. With Dr. Dominguez as a witness, the detectives showed the photographic lineup to Leban, who identified the photo of defendant in the lineup as the shooter.
Based on Leban’s identification of defendant, an arrest warrant was issued for Robert Diggins. He was arrested by the NOPD on April 30, 2008. On July 1, 2008, the State charged defendant with the attempted second degree murder of Leban.
Defendant pled not guilty, and filed a motion to suppress the evidence and photo identification. At the motions and probable cause hearing, Det. Shepak testified about the investigation of defendant, and about the compilation and presentation of the photographic lineup.[2] Based on the testimony and evidence | ¡¡presented, the trial court denied defendant’s motion to suppress and found sufficient probable cause to sustain the charge of attempted second degree murder.
Defendant elected to have a trial by jury, and a unanimous twelve member jury found defendant guilty on May 11, 2010. The State subsequently filed a multiple offender bill seeking to have defendant sentenced as a fourth time felony offender under the Habitual Offender Law, La. R.S. 15:529.1. The trial court held a multiple bill hearing, at which testimony and evidence of defendant’s three prior felony convictions were presented. The trial court then found defendant guilty as charged of the multiple bill as a fourth offender. The trial court sentenced defendant to life imprisonment at hard labor without the benefit of probation or suspension. This appeal followed.
ERRORS PATENT
A review of the record for errors patent reveals error in the trial court’s imposition of sentence. At the sentencing hearing, the trial court referenced the incorrect subsection and paragraph of the Habitual Offender Law under which defendant’s sentence was imposed, but the minutes and sentencing order reflect a proper sentence in conformity with the correct provisions of the statute. The trial court also failed to restrict defendant’s eligibility for parole in accordance with the relevant sentencing statutes. Although La. R.S. 15:530.1 self-activates the correction to the parole eligibility restriction, we clarify the specific provision of the statute by which defendant’s sentence was imposed.
Defendant was found guilty as charged of attempted second degree murder, in violation of La. R.S. 14:(27)30.1. Upon a first conviction for this crime, the relevant sentencing statute provides, “If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than | nten nor more than fifty years without benefit of parole, probation, or suspension of sentence.” La. *780 R.S. 14:27(D)(l)(a). Having been adjudicated as a fourth felony offender, however, defendant’s sentence must conform to the statutory provisions of the Habitual Offender Law.
For a fourth felony offender, La. R.S. 15:529.1(A)(4) provides:
If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then'
(a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life; or
(b) If the fourth felony and two of the prior felonies are felonies defined as a crime of violence under R.S. 14:2(B), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or of any other crime punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
The three prior felony convictions charged in defendant’s multiple offender bill include: (1) one conviction for the violation of La. R.S. 40:967(C), possession of cocaine, punishable by no more than five years; (2) one conviction for the violation of La. R.S. 40:966(C), possession of heroin, punishable at hard labor for not less than four years and no more than ten years; and (3) one conviction for the violation of La. R.S. 14:69(A), possession of stolen property over $500, punishable by no more than five years.
Only one of defendant’s prior felony convictions and the instant conviction fall with the provisions of La. R.S. 15:529.1(A)(4)(b), but at the sentencing hearing, the trial court stated that defendant’s sentence was being imposed under that statutory subsection. A sentence imposed under paragraph (b) shall be a [7mandatory life sentence without parole, probation or suspension of sentence. We instead find La. R.S. 15:529.1(A)(4)(a) to be the applicable provision under which defendant’s sentence should be imposed.
The sentencing hearing transcript, minutes, and order to the Department of Corrections reflect that the trial court imposed a sentence conforming to La. R.S. 15:529.1(A)(4)(a), despite referencing paragraph (b) during the sentencing hearing. The trial court also imposed defendant’s sentence in conformity with the restrictions required by the Habitual Offender Law under La. R.S. 15:529.1(G) which provides, “[a]ny sentence imposed under the provisions of this Section shall be at hard labor without benefit of probation or suspension of sentence.” However, the trial court still imposed an illegally lenient sentence by failing to specify the sentencing restrictions for the underlying offense of attempted second degree murder.
As a fourth offender with a present conviction for attempted second degree murder, defendant was subject to a sentence of not less than fifty years without benefit of parole, probation, or suspension of sentence, and not more than his natural life without benefit of probation or suspension of sentence. Defendant’s sentence must therefore include a restriction on parole eligibility for the first fifty years of his sentence. See State v. Davis, 07-1208, p. 1 (La.12/14/07), 970 So.2d 982, 982-83.
*781 Since La. R.S. 15:301.1(A) self-activates the correction to include the parole restriction, we find no need to remand for ministerial correction of the sentence.[3] See State v. Thomas, 10-0651, p. 7 (La.App. 4 Cir. 6/8/11), 70 So.3d 96, 100-01; State v. Simmons, 10-1508, p.3 (La.App. 4 Cir. 5/18/11), 67 So.3d 525, 528.
DISCUSSION
Assignment of Error # 1 Motion to Suppress
In the first assignment of error, defendant argues that the trial court erred in denying his motion to suppress the FEMA letter bearing defendant’s name, because the letter was obtained by a war-rantless search of his truck. Defendant contends that the investigating officers, Det. Shepak and Det. Duzac, discovered the FEMA letter inside the truck that they had gained access to without consent of the registered owner and without a warrant. Defendant points out that Det. Shepak testified, at the trial court hearing on the motion to suppress that the FEMA letter was found on the ground next to, rather than inside, the truck. At trial, however, Det. Duzac testified that he found the FEMA letter on the front seat of the truck. The detectives did not testify at either the motion hearing or the trial that they had obtained a search warrant for the truck.
A defendant who claims that evidence in his case was illegally obtained must comply with the procedures governing a motion to suppress. La.C.Cr.P. art. 703 provides that a “defendant adversely affected may move to suppress any evidence for use at the trial on the merits on the ground that it was unconstitutionally obtained.” La.C.Cr.P. art. 703(A). Subsection (C) further provides,
A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file |flthe motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
La.C.Cr.P. art. 703(C).[4]
The article also provides that the trial court’s ruling on a motion to suppress, prior to trial on the merits, is binding at trial, and “[fjailure to file a motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.” La.C.Cr.P. art. 703(F).
If defendant seeks to object to the evidence at trial based on new information, then defendant must make an objection at trial to preserve the issue for appeal. La. C.Cr.P. art. 841.
An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence .... It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the *782 court to take, or of his objections to the action of the court, and the grounds therefor.
La.C.Cr.P. art. 841(A).
In this case, defendant filed a pre-trial motion to suppress evidence as part of a boilerplate motion for preliminary hearing, discovery, suppression of evidence, and bill of particulars that does not cite the specific facts of this case or refer to any particular evidence to be suppressed.[5] At the motions hearing on April 9, 2009, lioDet. Shepak testified that his partner, Det. Duzac, found the FEMA letter outside the truck on the ground of the garage, which they accessed with the permission of A.J. Messina.[6] At the motion hearing, defense counsel did not question the discovery of the FEMA letter, or present any argument to the trial court that the seizure of the FEMA letter resulted from an illegal search. Defense counsel only presented an argument for the suppression of the photographic line-up identification by the victim. Based on the evidence and testimony presented to the trial court at the hearing, the trial court ruled to deny defendant’s motion to suppress the evidence and identification.
At trial, Det. Duzac testified about the investigation at the scene of the shooting leading to the development of defendant as a suspect. Det. Duzac testified that Messina led the detectives into the garage, and opened the truck door for them. Det. Duzac then located a FEMA letter bearing the name of defendant “within the front seat of that vehicle.” Det. Duzac identified the FEMA letter as the notice he found inside the truck, and the State offered, filed, and introduced into evidence the FEMA letter as State’s exhibit 26, with no objection from the defense. On cross-examination, defense counsel did not ask Det. Duzac about how or where the FEMA letter was found.
Defense counsel did not raise the issue of whether the evidence was seized as a result of an illegal search within the written motion, or at the hearing on the motion to suppress. Defense counsel also did not object to the introduction of this evidence into the record at trial. La. C.Cr.P. art. 703(F); La.C.Cr.P. art. 841(A); See State v. Butler, 12-2359, p. 4-5 (La.5/17/13), 117 So.3d 87, 89. “Louisiana courts have long held a defendant may not raise new grounds for suppressing evidence on appeal that he did not raise at the trial court in a motion to suppress.” State v. Montejo, 06-1807, p. 22 (La.5/11/10), 40 So.3d 952, 967. Thus, we find that this issue has not been preserved for appeal, and this assignment of error has no merit.
Assignment of Error # 2 Exculpatory Photos
In his second assignment of error, defendant argues that the State refused to *783 turn over exculpatory photographic evidence in violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[7]
This issue has already come before this court and the Louisiana Supreme Court on the State’s application for supervisory writs during trial. At trial, defense counsel made a motion to the court, outside the presence of the jury, for the State to turn over any photographs taken of the defendant from November, 2007 through the date of the shooting on February 15, 2008. Defense counsel contended that defendant had dreadlocks at the time of his arrest in April 2008, but the victim, Leban, stated during cross-examination that he did not recall the shooter having dreadlocks. Defense counsel argued that, if the State had photographs of the defendant with dreadlocks in the months prior to the shooting, then that evidence should be considered exculpatory. Following an in camera inspection of the | ^photographs that the State had not turned over to the defense, the trial court granted the defense motion and ordered the State to disclose the photographs to the defense. The State argued to the court that the photographs were not exculpatory evidence, refused to turn over the photographs to the defense, and applied to this court for supervisory review of the trial court’s ruling.
On review of the State’s application for supervisory writ, this court found that the trial court’s ruling was not an abuse of discretion and denied the writ. State v. Diggins, unpub., 2010-0678 (La.App. 4 Cir. 5/10/10). The State then applied to the Louisiana Supreme Court, which reversed the ruling of the trial court and this court, held that the photographs of the defendant did not constitute Brady material, and denied the defense motion to produce the photographs. State v. Diggins, unpub., 2010-1076 (La.5/10/10).
Defendant has presented no new evidence that the prior ruling of the Louisiana Supreme Court on this issue was in error. Following the “law of the case” doctrine, we will not reconsider this issue on appeal. See State v. McElveen, 10-0172, p. 23-24 (La.App. 4 Cir. 9/28/11), 73 So.3d 1033, 1054; State v. Davis, 09-0438, p. 12-13 (La.App. 4 Cir. 1/13/10), 30 So.3d 201, 207-08. Thus, this assignment of error has no merit.
Assignment of Error # 3 Fair Trial
Defendant’s third assignment of error sets forth several arguments revolving around the central assertion that defendant was denied a fair trial. We address these arguments in three categories, as presented by defendant: prejudicial comments by the court; denial of defense; and biased rulings on hearsay.

Prejudicial Comments by the Court

| ^Defendant contends that the trial court made disparaging remarks to defense counsel that prejudiced the jury against the defendant. Upon our review of the cited comments and remarks, in light of the harmless error standard of review, we do not find merit to defendant’s argument that the trial court’s comments *784 prejudiced the jury or contributed to the jury’s verdict.
During a jury trial, the judge has a duty to remain neutral and impartial, while administering the law through rulings on evidence and charging the jury as to the applicable law. State v. Baldwin, 388 So.2d 679, 686-87 (La.1980). “A judge is more than a moderator; he is charged to see that the law is properly administered, and it is a duty which he can not discharge by remaining inert.” United States v. Marzano, 149 F.2d 923, 925 (2nd Cir.1945); see also Baldwin, 388 So.2d at 686-87. In the discharge of his duties, the judge shall not comment upon the facts of the case in the presence of the jury, either by commenting on evidence or testimony or by giving an opinion as to what has been presented, proved, or not proved. La.C.Cr.P. art. 772.
If, during trial, a defendant believes that the trial court commented improperly on the evidence, or made prejudicial comments in the presence of the jury, then defendant should object at the time of the occurrence or move for a mistrial. Baldwin, 388 So.2d at 686; La.C.Cr.P. arts. 770, 775. A motion for mistrial or a contemporaneous objection to the alleged prejudicial comments or .judicial bias preserves the issue .for review on appeal. La. C.Cr.P. art. 841. See State v. Ellwest Stereo Theatres, Inc., 412 So.2d 594, 597 (La.1982).
We review claims of prejudicial comments or bias under a harmless error analysis.
114Harmless-error review looks ... to the basis on which “the jury actually rested its verdict.” Yates v. Evatt, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)(emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error.
Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). In order to constitute reversible error, the judge’s improper comments must be such as to have influenced the jury and contributed to the verdict, thereby denying the defendant a fair trial. State v. Johnson, 438 So.2d 1091, 1102 (La.1983).
Defendant cites twenty alleged prejudicial comments or disparaging remarks by the trial court. Upon a thorough review of all instances cited by defendant, the majority of the cited comments involve the trial court’s moderating function during trial.
The trial court has a duty to maintain control over the questioning of witnesses and presentation of evidence to the jury. In addressing similar comments made by the trial court in State v. Jones. This court noted,
A trial judge has the responsibility to exercise control over the nature of the questions posed by counsel to ensure fairness and judicial economy. An unavoidable risk of this duty is that in the heat of a trial, adverse rulings may incorrectly appear to reflect the judge’s opinion of a party, witness or theory of the case. Experienced trial lawyers aware of this risk weigh seriously these concerns in phrasing questions to a witness. Thus, the risk exerts a moderating influence on the excesses of advocacy-
Jones, 593 So.2d 802, 804 (La.App. 4th Cir.1992).
In Jones, defendant complained of the trial court’s comment that defense counsel’s questioning of a witness was “out of *785 line.” Id. at 803. Similarly, in this case, one of defendant’s complaints references the trial court’s comment that | ^defense counsel was “out of line.” Defendant also cites two instances when the trial court asked defense counsel to stop making arguments or “side comments” to the jury during the questioning of witnesses. In this case, as in Jones, we find that these comments do not evince impartiality or bias. “The challenged remark of the trial judge, whether inappropriate or not, does not rise to the level of a prejudicial error which requires reversal. Standing alone, the remark does not evidence the judge’s abandonment of neutrality which is required to constitute prejudicial error.” Jones, 593 So.2d at 804.
This court has reviewed and addressed each of the twenty cited instances of improper or prejudicial comments, and included an analysis of each in an appendix to this opinion.[8] After review of the entire record and the trial court comments cited by defendant as prejudicial, we find no merit to defendant’s argument that the comments prejudiced the jury against defendant and denied him a fair trial.

Denial of Defense

Defendant argues he was denied a complete defense when the trial court refused to allow two defense witnesses to testify, and prevented the defense from presenting evidence refuting Leban’s account of the incident. Our review of the record reveals that defendant inaccurately portrays the trial court’s rulings. The trial court ruled that (1) defendant could not question the two defense witnesses, Ms. Ashley Terry and NOPD Officer Urlisa Dabney, about the police report from the night of the shooting, and (2) the police report was inadmissible hearsay.
Defendant subpoenaed Ms. Terry, a former NOPD officer, and Ofc. Dabney to testify as defense witnesses. During trial, but out of the presence of the jury, the | lfiState made an oral motion in limine to prevent the defense from introducing hearsay testimony. The State argued that hearsay testimony would be elicited if the defense questioned these witnesses about a police report from the night of the shooting. Defense counsel argued that it intended to question the witnesses about what they observed when they arrived on the scene in response to the 911 call of the shooting. The trial court reminded defense counsel that the police report was inadmissible hearsay under the Louisiana Code of Evidence art. 802, and that the defense could not question the officers about the content of that report, but the trial court did not prevent defense counsel from calling these witnesses to testify as to their memory of the events.
Both witnesses testified that they were working as NOPD officers on the night of the shooting. Ms. Terry testified that she had written a police report about that incident, but that she had reviewed it, and had no refreshed recollection of that specific incident and responding to that particular scene. Ofc. Dabney also testified that she did not remember the shooting incident in question or any events from that night. Thus, neither witness could testify as to her memory of events of that evening. La. C.E. art. 602.[9]
*786 Despite testifying that she did not remember the incident, Ms. Terry stated that she reviewed the police report from that incident, and acknowledged that she had written it. Defense counsel then attempted to ask Ms. Terry further questions about the scene of the shooting, the 911 call that prompted their response to the scene, and what the witness had reported to police. The State objected to defense’s questions on the basis of preventing defense counsel from eliciting hearsay | ^testimony. In sustaining these objections, the trial court repeatedly told defense counsel that the police report itself and the statements taken from witnesses on the scene were inadmissible hearsay. We agree with the trial court’s hearsay ruling, because a police report is specifically excluded as an exception to the hearsay requirement under La. C.E. art. 803(8)(b)(i), and defense counsel could not question the witness about events that she could not remember.[10] See State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1031.
We find no error in the trial court’s rulings on the testimony of the defense witnesses, or the introduction of the police report into evidence. Thus, we find no merit to defendant’s argument that the trial court denied defendant a complete defense.

Biased Rulings on Hearsay

In the final sub-part of his third assignment of error, defendant argues that the trial court’s inconsistent and improper rulings on hearsay favored the State, prevented defendant from presenting a com-píete defense, and denied defendant a fair trial. Defendant supports this argument with seven alleged examples of the trial court’s biased rulings on hearsay. Our review of the hearsay rulings cited by defendant reveals that defense counsel disagreed with the trial court’s interpretation and application of hearsay rules, under Louisiana Code of Evidence arts. 801 through 806, regarding what testimony and evidence constitutes hearsay or an exception to hearsay. We review each hearsay ruling of which defendant complains.
jisl. Defendant complains that the trial court “stopped two attempts to solicit hearsay” during the State’s questioning of Ofc. Abney, but allowed the State “to use hearsay on the essential question of identity.”
While questioning Ofc. Abney about his contact with Leban after the shooting, the State inquired with the trial court if it could ask Ofc. Abney whether Leban made an identification of the shooter.[11] The trial court requested a bench conference with counsel on this issue, which is not in the record, and then the State proceeded with its questioning of Ofc. Abney:
MR. HESNI: Sir, you asked the man lying on the ground who had been shot a question. What did you ask him?
WITNESS [OFC. ABNEY]: I said was it the same person who took your cell phone and shot you?
*787 MR. HESNI: Okay. Now, without telling us what he said, I merely want to know if you got an answer. Don’t tell us what he said. Did he respond to your question?
WITNESS [OFC. ABNEY]: We made eye-contact and he nodded his head in an up and down motion.
Although we do not have a record of the statements or arguments made during the bench conference, we are satisfied that the trial court correctly followed the law on hearsay by allowing the State to ask this question. Hearsay is a statement, other than one made by the declarant while testifying at trial, to prove the truth of the matter asserted. La. C.E. art. 801(C). Hearsay includes oral and written assertions and the nonverbal conduct of a person if it is intended by him as an assertion. La. C.E. art. 801(A). However, certain statements constituting hearsay by definition may be admitted pursuant to a hearsay exception.
1 iflHere, we find that Ofc. Abney’s testimony is admissible evidence under the res gestae hearsay exception. See La. C.E. art. 404(B)(1); La. C.E. art. 801(D)(4). “The res gestae doctrine includes the testimony of witnesses and police officers pertaining to what they heard or observed before, during or after the commission of the crime, provided there is a continuous chain of events under the circumstances.” State v. Brown, 03-1616, p. 14 (La.App. 4 Cir. 3/31/04), 871 So.2d 1240, 1250; see also State v. Reese, 250 La. 151, 194 So.2d 729, 733-34 (1967); State v. Colomb, 98-2813, p. 3 (La.10/1/99), 747 So.2d 1074, 1076. Based on Ofc. Abney’s testimony that he had communicated with Leban earlier the same day in response to the first 911 call, and learned that Leban intended to file a complaint against the person who stole his cell phone, the question asked of Ofc. Abney related to the officer’s knowledge or observation of a continuous chain of events.
“Nevertheless, even if the complained of testimony was .improperly allowed as an exception to the hearsay rule, the Supreme Court has long held that the admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial.” State v. Everett, 11-0714, p. 19 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 621 (citing State v. Johnson, 389 So.2d 1302, 1306 (La.1980)). Here, Ofc. Abney’s testimony corroborated the testimony of the victim/declarant, Leban, at the trial. Thus, based on our review of the record and the applicable hearsay rules, we find no error in the trial court’s hearsay ruling.
2. Defendant next argues that the trial court improperly allowed the State to introduce into evidence statements made by A.J. Messina, who was not called to testify. Defendant directs this court to the State’s questioning of Det. Duzac about the investigation at the scene of the shooting. Our review of the State’s questions | anand Det. Duzac’s responses reveals that Det. Duzac did not repeat any hearsay statements. Det. Duzac testified about the information he gathered during the course and scope of his investigation into the shooting. “The testimony of a police officer may encompass information provided by another individual without constituting hearsay, if it is offered to explain the course of the police investigation and the steps leading to the defendant’s arrest.” State v. Maise, 00-1158, p. 17 (La.1/15/02), 805 So.2d 1141, 1152, overruled on other grounds by State v. Bernard, 09-1178, p. 7 (La.3/16/10), 31 So.3d 1025, 1030; see State v. Legendre, 05-1469, pp. 11-14 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 52-54. Det. Duzac testified to *788 the events leading up to the discovery of defendant’s truck and the FEMA letter, but did not testify about statements made by A.J. Messina. We find no hearsay testimony, and thus, we find that the trial court properly overruled defense counsel’s objection.
8. Defendant claims that the trial court erred by refusing to allow defense counsel to question Det. Duzac about his signature on the Major Offense crime scene sign-in sheet from the shooting investigation. Defendant contends that the signature sheet and Det. Duzac’s testimony regarding it were admissible evidence, and the trial court made a biased and incorrect ruling.
The trial court ruled that the crime scene signature sheet was inadmissible, because Det. Duzac did not prepare that document or récall signing it. We find no error in this hearsay ruling because Det. Duzac could not testify to the contents of that document that he did not prepare or recall.[12]
|214. Defendant argues that the trial court improperly admitted hearsay testimony by Ofc. Billiot regarding Le-ban’s photo identification of defendant as the shooter. The State questioned Ofc. Billiot about Leban’s photo line-up identification of defendant while at the hospital. Ofc. Billiot testified that he asked Leban if he would be able to identify the shooter. Ofc. Billiot then stated Leban “nodded his head indicated that — ,” at which point defense counsel objected to the testimony as hearsay. The trial court overruled the objection. Ofc. Billiot then testified that he showed Leban the photo lineup, and stated that Leban “did this to the picture (indicating), right here, indicating that this is the suspect who shot him.” Defense made another hearsay objection, and the trial court stated: “when a person proceeds with his eyes, with his eyes, like you perceive me doing this with pen. It’s not hearsay.”
As we discussed with regard to the first hearsay example, hearsay includes the nonverbal conduct of a person if it is intended as an assertion. La. C.E. art. 801(A)(2). In contrast to our previous finding, we do not find a sufficient basis to apply the res gestae hearsay exception, or any other exception, to this testimony. Here, Ofc. Billiot had not communicated with Leban previously, and had no knowledge of the continuation of events linking the instant crime against him to a previous crime against him earlier that day. During his only interaction with Leban, Ofc. Billiot testified that he witnessed Leban indicate his assertion that defendant was the shooter. This testimony was presented to prove the truth of the matter asserted.
Although Ofc. Billiot’s testimony constitutes inadmissible hearsay, we find the trial court’s error in improperly admitting the testimony was harmless. See Brown, 02-1217 at p. 14, 853 So.2d at 16. Louisiana jurisprudence holds that the | ^admission of hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Williams, 12-0252, p. 23 (La.App. 4 Cir. 4/17/13), 115 So.3d 600, 613; State v. Johnson, 389 So.2d at 1306. Ofc. Billiot’s testimony was cumulative given Leban’s testimony at trial identifying defendant as the person who shot him. Given the weight of Leban’s testimony at trial, we conclude that the trial court’s error in admitting Ofc. Billiot’s testimony was harmless error.
*789 5. As his fifth example of alleged biased rulings on hearsay, defendant directs this court to defense counsel’s questioning of Ofc. Billiot during trial. Defendant describes a portion of the trial proceedings covering five pages of the trial transcript, but fails to point to a specific trial court ruling as biased or improper.[13] Within this portion of the transcript, the court sustained three objections by the State in response to the following questions by defense counsel:
MR. REGAN: Did Mr. Leban, the victim, describe the' shooter as having short hair like that?
[[Image here]]
MR. REGAN: Are you aware from any documents from Mr. Leban’s investigation was attacked by two men that night?
[[Image here]]
MR. REGAN: Did your investigation indicate — that’s your investigation— indicate that there were two people involved with him the night of the shooting?
12.sThe trial court sustained all three objections for hearsay. After sustaining the third objection, the trial court explained to defense counsel, “for the same reason and under the same law, I’m sustaining their objection to any attempt to introduce She-pak’s police report.” Ofc. Billiot had testified that Det. Shepak led the investigation, compiled the photo lineup, and authored the police report of the investigation, but Det. Shepak was unable to testify at trial due to an injury sustained while on duty. Considering Ofc. Billiot’s testimony of his involvement in the investigation, the trial court reasoned that defense counsel was attempting to question Ofc. Billiot based on his knowledge of Det. Shepak’s investigation and report.
In our review of defense counsel’s questioning, the trial court’s rulings on the first two questions cited above appear proper and nonprejudicial. As to the first question, defense counsel elicited hearsay testimony from Ofc. Billiot about Leban’s statements describing the shooter. The second question references police investigative reports or documents which are excluded from the hearsay exception to public records and reports under La. C.E. art. 803(8)(b)(i). The third question, however, references Ofc. Billiot’s investigation generally. The form of that question would not necessarily elicit hearsay testimony, and the trial court’s ruling is arguably improper.[14] After the trial court’s ruling, *790 however, defense counsel ^rephrased his questions to Ofc. Billiot, and, without objection, established that Ofc. Billiot’s investigation involved the development of only one suspect. Defense counsel’s inquiry was satisfied. Thus, any error in the trial court’s ruling to the third question, quoted above, was harmless.
6. As his sixth example, defendant complains that the trial court refused to allow defense counsel to question Leban about Mr. Harrison’s 911 call reporting the shooting. Defense counsel asked Leban if he knew “why the man across the street said you were shot and pushed out of a car.” Leban responded that he did not know who defense counsel was referring to, but then stated, “oh, you must be talking about the individual that asked me — .” Before completing the statement, the trial court interrupted, cautioned Leban that anything Mr. Harrison said would be hearsay, and stated that the question calls for speculation and conjecture for Leban to answer questions about Mr. Harrison’s statements. The trial court made this hearsay ruling on its own, without objection from the State.
The trial court properly ruled against defense counsel’s question of Le-ban. Defense counsel asked Leban to speculate about why Mr. Harrison told the police that he saw Leban get pushed out of a car. Leban did not hear or observe Mr. Harrison make the statement, and Leban did not hear the 911 call. Leban could give only his opinion or speculate as to Mr. Harrison’s own thoughts and statements. Lay witness are not generally permitted to give opinion testimony. La. C.E. art. 701 permits lay witnesses to testify in the form of opinion or inference |2sOnIy where such opinions or inferences are limited to those (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the testimony or the determination of a fact in issue. See State v. Howard, 98-0064, pp. 27-28 (La.4/23/99), 751 So.2d 783, 813. Here, defense counsel’s question prompted Leban to form an opinion about Mr. Harrison’s thoughts, perceptions, and statements to police. Le-ban could not offer such an opinion under La. C.E. art. 701. Thus, we find no error in the trial court’s refusal to allow Leban to respond to defense counsel’s question.
7. As a final example of alleged biased hearsay rulings, defendant contends that the trial court allowed the State to offer hearsay testimony during its rebuttal closing argument by referencing an alleged deal between A.J. Messina and defendant to paint defendant’s truck. Defense counsel objected to any reference to an alleged deal as hearsay, prompting the trial court to tell the jury, “I cannot comment on the evidence. Jurors must rely on their memories as to what the evidence was.”
A review of the closing statement cited by defendant reveals that the State referenced only Leban’s testimony. The State did not discuss or repeat a conversation *791 between A.J. Messina and defendant. The State merely reviewed the testimony of Leban about his previous interactions with defendant, which included Leban’s observations of defendant bringing his truck to A.J. Messina’s shop. In response to the objection, the trial court sufficiently instructed the jury to rely on the evidence. We find no error in the trial court’s ruling or statement to the jury.
The foregoing review of the alleged biased trial court rulings, as part of our review of the entire trial transcript and record, reveals no prejudicial errors by the trial court. We find no harmful, reversible errors among the trial court rulings.
| gfiHaving reviewed all of defendant’s arguments within his third assignment of error, we find nothing in the record to support the contentions that he was prejudiced by trial court comments, denied a complete defense, or prejudiced by biased hearsay rulings. Thus, we find no merit to defendant’s assertion that he was denied a fair trial.
Assignment of Error # 4 Improper Closing Arguments
In his fourth assignment of error, defendant claims the trial court erred by allowing improper closing arguments by the State. Defendant complains often instances of alleged improper comments by the State, and defendant further contends that the trial court made demeaning comments to defense counsel in overruling defense objections to the State’s closing arguments.
The scope of the closing arguments of either defense counsel or the State, as provided in La.C.Cr.P. art. 774,
shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and the law applicable to the case. The argument shall not appeal to prejudice. The state’s rebuttal shall be confined to answering the argument of the defendant.
In reviewing claims of improper arguments, Louisiana jurisprudence maintains that a prosecutor has wide latitude when making closing arguments, and the trial court has broad discretion in controlling the scope of those arguments. State v. Casey, 99-0023, p. 17 (La.1/26/00), 775 So.2d 1022, 1036; State v. Dank, 99-0390, p. 14 (La.App. 4 Cir. 5/24/00), 764 So.2d 148, 159-60. “[E]ven if the prosecutor exceeds these bounds, the court will not reverse a conviction unless ‘thoroughly convinced’ that the argument influenced the jury and contributed to the verdict.” Casey, 99-0023 at p. 17, 775 So.2d at 1036; see also State v. Martin, 93-0285, p. 17 (La.10/17/94), 645 So.2d 190, 200; State v. Jarman, 445 So.2d 1184 (La.1984). 127“[P]fosecutorial misconduct must be so pronounced and persistent that it casts serious doubts upon the correctness of the jury’s verdict.” United States v. Rodriguez, 43 F.3d 117, 124 (5th Cir.1995). The reviewing court should accord credit to the good sense and fair-mindedness of the jury that heard the evidence. State v. Henry, 11-1137, p. 15 (La.App. 4 Cir. 10/24/12), 102 So.3d 1016, 1025; see also State v. Carroll, 546 So.2d 1365, 1371 (La.App. 4th Cir.1989).
Defendant argues that the State’s improper remarks and closing argument served as grounds for a mistrial pursuant to La.C.Cr.P. arts. 770 and 771. Defendant also contends the trial court did not allow the defense to put a motion for mistrial on the record. We will review the alleged improper, prejudicial remarks in the context of the entire trial, subject to harmless error review.
In the first instance complained of, defendant asserts that the State accused defendant of “hiding something.” *792 Defendant directs this court to comments during the State’s rebuttal argument, in which the State argued that it was not attempting to hide anything by not calling certain witnesses. The State made no reference or accusation that defense counsel or defendant was “hiding” something, but rather, the State clarified its own position and arguments. We find that defendant has misconstrued this comment. Even assuming that the State directed this remark at the defendant, we find that there was overwhelming evidence presented to the jury to support the guilty verdict, and such a comment would not constitute reversible error.
Defendant also contends that there were three instances during closing arguments to the jury when the State criticized defense counsel’s arguments or tactics as “a game,” “pounding the table,” and “wasting your time.” In our review of the transcript, the State arguably exceeds the scope of proper argument by |2smaking comments about defense counsel’s objections during the State’s closing argument. See State v. Jackson, 568 So.2d 599, 603 (La.App. 4th Cir.1990). Dramatic remarks, such as these, may exceed the scope of argument, but the trial court properly instructed the jury at the beginning of trial and before deliberations to follow the law and evidence rather than argument. Considering the overwhelming evidence against the defendant in this case, we are not convinced that these remarks influenced the jury or contributed to the verdict. See Jackson, 568 So.2d at 602; State v. Byrne, 483 So.2d 564, 573-74 (La.1986). We do not find such comments constitute reversible error.
In four more examples of alleged improper arguments by the State, defendant contends that the State argued and relied on facts not in evidence in order to prejudice the jury, and divert the attention of the jury from the State’s failure to meet its burden of proof.
In the first example, defense counsel objected to the following argument by the State:
MR. PHILLIPS: You see, they want you to believe that Mr. Leban was thrown out of his vehicle. Well, I call you to use your common sense, based on your life experience. Now ladies and gentleman, if you push somebody out of a car — a moving car at that— don’t you think you might see—
MR. REGAN: Objection. There was no testimony to that—
As a second objectionable statement, defendant also cites the following statement by the State:
MR. PHILLIPS: Now, if I’m pushed out of a vehicle — if I’m pushed out of a car, as you hear on the 911 — and we’re going to deal with the 911 tape. But if I’m pushed out of a moving car, that’s speeding off—
In the context of the entire trial, we do not find that either of these arguments could have unduly prejudiced the jury. During opening statements, defense | gflCounsel argued to the jury that there was a witness who stated to the police that Leban was shot and pushed out of a vehicle to the ground. In the cross-examination of witnesses, defense counsel posed questions about the alleged witness, Mr. Harrison, and the alleged statement that he made about seeing a man pushed out of a vehicle. In light of the entire transcript and the opening and closing arguments of the State and defense, it appears that the State offered these remarks in rebuttal to the defense counsel’s argument and theory of the case. See State v. Vincent, 07-239, p. 14 (La.App. 5 Cir. 12/27/07), 978 So.2d 967, 976. We do not find that these com- *793 merits prejudiced the jury or contributed to the verdict.
Defendant also claims that the State argued on facts not in evidence by referencing an alleged deal between Messi-na and defendant to have the defendant’s truck painted. Messina, the mechanic from the repair shop, did not testify at trial. Defendant objected to any reference to an alleged deal as hearsay. In response to defense counsel’s objection, the trial court stated to the jury, “I cannot comment on the evidence. Jurors must rely on their memories as to what the evidence was.” We find that this instruction properly directed jurors to rely on the testimony and evidence presented during trial. The jury had heard Leban’s testimony that he witnessed the defendant drop off the truck at the garage and have a conversation with Messina. He also testified that he spoke to defendant and Messina, and asked that the truck be parked in the garage rather than on the street. We are not convinced that the jury was influenced by the State’s comments or that the comments contributed to the verdict, because the jury heard eyewitness testimony from the victim about his own interactions with the defendant.
In defendant’s fourth complaint of the State arguing from facts not in evidence, defense counsel objected to the following statement:
limMR. PHILLIPS: [T]hree other bullets could have went in that trailer across the street, and severed three other spines ...
The trial court again did not sustain the objection but told the jurors to rely on their memory of the evidence presented. Leban testified that he heard multiple shots before he fell to the ground from his gunshot wound, but Det. Duzac testified that the detectives were unable to determine if more than one shot was fired.
The State’s comment may exceed the scope of proper closing argument, because the State appealed to juror’s emotions, sympathies and fears. See State v. Eaton, 524 So.2d 1194, 1208 (La.1988) (“The Court has warned prosecutors they are not to turn closing argument into a plebiscite on crime.”); State v. Williams, 96-1023, p. 15 (La.1/21/98), 708 So.2d 703, 716. However, in light of the victim’s testimony during trial and giving credit to the fair-mindedness of the jury, we are not convinced that these remarks contributed to the jury’s verdict. Id.
In the ninth example of improper arguments, defendant claims that the State mocked the defendant when defense counsel interrupted the State’s rebuttal to request a break due to “an emergency.” The trial court denied the request for a break, but granted the subsequent request that defendant be excused from the courtroom. After defendant was excused from the courtroom, the State made the following remark:
MR. PHILLIPS: Sometimes, ladies and gentlemen, sometimes the truth hurts. Sometimes you can’t stand up and realize what you did to people. You can’t look them in the face and deal with it. You run from it.
This is real life. This is real life. And he was man enough to get up there and pull that trigger, wasn’t he? He was man enough to do that. Well, now it’s time to face the music.
The State’s comments appear to be an expression of opinion on defendant’s character and guilt, and such comments during closing argument are improper |S1 under La.C.Cr.P. art. 774. We note, however, that defense counsel did not object to these remarks during the closing arguments or make a motion for mistrial on the grounds of prejudicial conduct. La. *794 C.Cr.P. arfe. 775. Even if the jury took these remarks as a personal comment on defendant’s guilt, we are not convinced that these comments prejudiced the jury and contributed to the verdict considering the testimony and evidence presented during trial. See State v. Martin, 93-0285, pp. 18-19 (La.10/17/94), 645 So.2d 190, 200-01 (finding prosecutor’s characterization of defendant was improper under La. C.Cr.P. art. 774 but not so unfairly prejudicial as to warrant reversal); see also Jackson, 568 So.2d at 604; Byrne, 483 So.2d at 572.
In defendant’s last complaint against the State’s closing arguments, defendant contends that the State was allowed to present hearsay as direct evidence by replaying parts of a 911 recording and emphasizing statements made by the caller, Mr. Harrison, who was not called to testify at the trial. Defendant does not object to the introduction of evidence of the 911 recording of Harrison’s call. Rather, defendant objects to the manner in which the State used the recording during closing arguments.[15] The State played Harrison’s 911 call, stopped the recording several times and repeated statements made during the call.[16] Defense counsel objected several times to the State’s repetition of Harrison’s statements |S2and argued that the State could have called Harrison as a witness, but the trial court overruled those objections.
Considering the State offered the 911 recordings into evidence in conjunction with the testimony of the New Orleans 911 records custodian, the recordings were admitted into evidence presumably under La. C.E. art. 803(8), the public records and reports exception to the hearsay rule.[17] However, we do not have a *795 trial court ruling on the admission of the 911 recordings in the record. No objection was made to the admission of the recordings into evidence. This court has previously found 911 tapes to be inadmissible hearsay used for the truth of the matter asserted. Brown, 02-1217 at p. 14, 853 So.2d at 16. Leban’s 911 call was corroborated by his testimony at trial, but no testimony was presented about the contents and details of Harrison’s 911 call. The State could not assert that Harrison’s statements on the recording were a true and accurate representation of the scene of the shooting without presenting his testimony. The State improperly loused the 911 recording of Harrison’s call by presenting his statements as true statements of his perceptions of what happened the night of the shooting. We find that the trial court erred in allowing the State’s repetition of and emphasis on statements made in the recording. However, we are not thoroughly convinced that this error surely attributed to the verdict. See State v. Everett, 11-0714, p. 19 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 621; State v. Johnson, 389 So.2d at 1306. The jury heard the victim’s testimony of the events leading up to the shooting and his identification of defendant as the shooter. Giving credit to the fair-mindedness of the jury in weighing the evidence and testimony presented, we find that the State’s dramatic emphasis was not so unfairly prejudicial as to contribute to the verdict and warrant reversal.
Considering the comments complained of, both individually and cumulatively, we are not convinced that the jury was prejudiced or influenced by these comments or that the comments contributed to the verdict. There was overwhelming, properly admitted, evidence and testimony to support the jury’s verdict. This assignment of error has no merit.
Assignment of Error # 5[18] Excessive Sentence
In his fifth assignment of error, defendant contends that the trial court’s imposition of a life sentence was unconstitutionally excessive, because the trial court did not take into consideration defendant’s age, lack of prior convictions for crimes of violence, and lesser or alternative sentences.[19] Defendant also argues, inj^his pro se assignment of error on this issue, that the life imprisonment sentence was constitutionally impermissible because the State did not institute the proceedings against him by grand jury indictment. We address the issue of the grand jury indictment first.
The Louisiana Constitution of 1974, art. 1, § 15, provides in pertinent part, “Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury.”
If a defendant is charged with a criminal offense that does not carry the *796 possibility of a life sentence, then the State need not initiate the prosecution by grand jury indictment. Even if the State intends to seek an enhanced penalty in the penalty phase of prosecution, the substantive crime charged determines the manner in which the State initiates prosecution. As this court explained in State v. Vincent,
In State v. Alexander, 325 So.2d 777, 779 (La.1976), quoting State v. Jackson, 298 So.2d 777 (La.1974), the Court reasoned that the “(bill of) information [charging the defendant as a multiple offender] does not charge a crime but is merely the method of informing the sentencing court of the circumstances and requesting an enhancement of penalty.” Thus, the enhanced penalty proceeding does not charge the defendant with a crime; consequently no indictment is necessary. Id. Moreover, the charging instrument is dependent upon the classification of the substantive crime charged, not the enhanced penalty to which an individual may be subject upon conviction. Id.
10-0764, pp. 9-10 (La.App. 4 Cir. 1/19/11), 56 So.3d 408, 414-15.
In this case, the State initiated proceedings against defendant in a bill of information charging him with attempted second degree murder. A first conviction for attempted second degree murder carries a maximum penalty of fifty years at hard labor without benefit of parole, probation or suspension of sentence. Even though the State subsequently charged defendant as a fourth felony offender, lassubjecting him to a possible life sentence, the underlying substantive offense charged did not provide for a life sentence. Thus, we find defendant’s argument that the proceedings required a grand jury indictment to be without merit. See State v. Smith, 05-0375, pp. 3-4 (La.App. 4 Cir. 7/20/05), 913 So.2d 836, 838-840.
In regards to the claim that the trial court imposed an excessive sentence of life imprisonment, we must consider the relevant sentencing guidelines and the factors upon which the trial court based its determination. In State v. Smith, 01-2574, pp. 6-7 (La.1/14/03), 839 So.2d 1, 4, the Louisiana Supreme Court set forth the standard for evaluating such claims, stating:
A sentence is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355, 357 (La.1980). A trial judge has broad discretion when imposing a sentence and a reviewing court may not set a sentence aside absent a manifest abuse of discretion. State v. Cann, 471 So.2d 701, 703 (La.1985). On appellate review of a sentence, the relevant question is not whether another sentence might have been more appropriate but whether the trial court abused its broad sentencing discretion. State v. Walker, 00-3200, p. 2 (La.10/12/01), 799 So.2d 461, 462 ...
When reviewing a claim of an excessive sentence, we look to whether the trial court considered the sentencing guidelines within La.C.Cr.P. art. 894.1 and articulated a factual basis for the sentence imposed. State v. Wells, 10-1338, p. 13 (La.App. 4 Cir. 3/30/11), 64 So.3d 303, 311. “The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed.” La. C.Cr.P. art. 881.4(D).
We find that the trial court adequately complied with the guidelines of La.C.Cr.P. art. 894.1. During the sentencing hearing, the trial court referred to the findings on the defendant within the pre-sentence investigation report including three prior felony convictions, that served as the basis for his fourth felony DfiOffender status, and several other ar *797 rests for possession of controlled substances and carrying a concealed weapon. The trial court noted that defendant had received leniency from the court on prior charges with probation and suspended sentences, but defendant continued to commit crimes. The trial court stated that, based on defendant’s criminal history and the violent nature of this crime, there was an undue risk that defendant would commit more criminal offenses if he received a lesser sentence. Finally, the court took into consideration the victim impact statement and the pre-sentence investigation interview with the victim who was permanently paralyzed from the abdomen down as a result of the instant crime.
Based on the trial court’s review of the record of this crime, the defendant’s criminal history, the severe and life-altering nature of the offense, and the future risk of harm to others, we find that the trial court adequately complied with La.C.Cr.P. art. 894.1, and defendant’s sentence of life imprisonment without probation or suspension is supported by the record. See State v. Randall, 10-1027, pp. 10-13 (La.App. 4 Cir. 6/22/11), 69 So.3d 683, 689-90 (holding the imposition of a maximum sentence of life imprisonment was not excessive for conviction of possession of cocaine where defendant was adjudged to be a fourth felony offender with prior convictions for manslaughter, two prior convictions for possession of cocaine, and numerous arrests for drug offenses, possession of a firearm by a felon, aggravated battery and armed robbery). Consequently, we find this assignment of error has no merit.
| ⅞7 Assignment of Error #6 Right to Appeal
Defendant’s sixth assignment of error claims that this court has infringed upon his constitutional right to appellate review by denying his motion for leave to file a brief in excess of our page limitation.[20]
Louisiana law ensures a defendant facing a life sentence has the right to full judicial review based upon a complete record of the evidence. La. Const, art. I, § 19. “While the constitutional provision does afford each defendant the right to judicial review based upon a complete record of all evidence upon which the judgment is based, the extent of this right is circumscribed by reasonable procedural formalities and requirements.... ” State v. Marcell, 320 So.2d 195, 198 (La.1975).
Louisiana appellate courts follow rules and procedures as promulgated and published to the public in the Uniform Rules of the Louisiana Courts of Appeal and Local Rules. Uniform Rule 2-12.2 and Local Rule 12 of the Fourth Circuit provide that a motion for leave to file a brief in excess of the twenty-eight page limitation may be granted for extraordinary and compelling reasons. The decision whether to grant or deny such a motion is within our discretion. Defense counsel’s appellate brief to this court did not identify any non-frivolous issues, or assignments of error that defendant was prevented from presenting to this court, and defendant has not made any showing that his right of appellate review was prejudiced by this court’s order allowing defendant only ten additional pages to [^present his arguments for appeal. We find no merit to defendant’s sixth assignment of error.
*798 Assignment of Error # 7 Ineffective Assistance of Counsel
In his final assignment of error, defendant asserts that he was denied effective assistance of counsel at trial. Defendant cites four examples in the record to support his argument.
Ordinarily, an ineffective assistance of counsel claim is properly raised in an application for post-conviction relief filed in the trial court where a full eviden-tiary hearing can be conducted. State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 801-02. If the record discloses sufficient evidence to permit a determination of counsel’s effectiveness at trial, then the claims may be addressed on appeal to serve the interests of judicial economy. State v. Kanost, 99-1822, p. 6 (La.App. 4 Cir. 3/29/00), 759 So.2d 184, 188.
Appellate courts assess ineffective assistance of counsel claims using a two prong standard set forth by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail, a defendant must establish that counsel’s performance was deficient and that the deficiency also prejudiced the defendant. State v. Jackson, 97-2220, p. 8 (La.App. 4 Cir. 5/12/99), 733 So.2d 736, 741. As to the former, the defendant must show that counsel made errors so serious that counsel was not functioning as the “counsel” that the Sixth Amendment guarantees. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. As to the latter, the defendant must show that “counsel’s errors were so serious as to deprive him of a fair trial, i.e., a trial whose result is reliable.” State v. McGee, 98-1508, p. 4 (La.App. 4 Cir. 3/15/00), 758 So.2d 338, 342. To carry his burden, defendant must show that there is a reasonable probability that, |S9but for counsel’s deficient performance the result of the proceeding would have been different. Strickland, 466 U.S. at 693-94, 104 S.Ct. at 2068; State v. Guy, 97-1387, p. 7 (La.App. 4 Cir. 5/19/99), 737 So.2d 231, 236.
“Effective counsel has been defined to mean not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.” State v. Anderson, 97-2587, p. 7 (La.App. 4 Cir. 11/18/98), 728 So.2d 14, 19. Given that “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Crowell, 99-2238, p. 8 (La.App. 4 Cir. 11/21/00), 773 So.2d 871, 878 (quoting State v. Brooks, 505 So.2d 714, 724 (La.1987)). “This court has recognized that if an alleged error falls ‘within the ambit of trial strategy' it does not ‘establish ineffective assistance of counsel.’ ” Crowell, 99-2238 at p. 8, 773 So.2d at 878.
In his first assertion of ineffective counsel, defendant contends that the alleged prejudicial rulings catalogued within counsel’s brief to this court reveal the inappropriate behavior of defense counsel during trial. Defendant previously argued in this appeal, in his third and fourth assignments of error, that the prejudicial comments and rulings of the trial court denied him a fair trial, but now defendant claims that defense counsel was responsible for provoking prejudice against him. Contrary to defendant’s present claim of ineffective assistance of counsel, the record reflects that defense counsel advocated consistently in defense of his client. We thoroughly reviewed the record of this trial and each allegation of prejudicial remarks and rul *799 ings, but we found no merit to these allegations and no prejudicial error.
|4nNext, defendant asserts that defense counsel failed to file a motion for new trial on the basis of the suppression of the exculpatory photos. We note that the trial court allowed defense counsel two weeks post-sentence to file a motion for new trial, but counsel failed to file a timely motion. With regards to the suppression of the exculpatory photos, as stated in the second assignment of error, the Louisiana Supreme Court reviewed this issue and ruled that the photos were not exculpatory. The alleged exculpatory photos are not new evidence. Based on the “law of the case” doctrine, a motion for new trial, filed on the basis of exculpatory photos alone, would not be sufficient grounds to grant a new trial.
Finally, defendant argues that defense counsel failed to examine the documents in support of the multiple bill, failed to file any motions in regard to those allegations that might support a life sentence, and was unprepared to offer any defense relative to the multiple bill.
Our review of the record does not support defendant’s complaints. Defense counsel reviewed the multiple bill prior to the hearing and protested defendant’s innocence. Counsel stipulated to the State’s witness’ expertise in the field of comparison and identification of latent fingerprints and thoroughly questioned the expert under cross-examination. Defense counsel did not present a defense because there was none to be made. Defendant does not specify any available defenses that counsel failed to raise. The State proved beyond a reasonable doubt that defendant was a quadruple offender under the provisions of the Habitual Offender Law, La. R.S. 15:529.1(A)(4).
With regard to the question of whether the defense attorney’s performance was deficient, defense attorneys are entitled to a strong presumption that their | ^conduct fell within the broad range of reasonable professional assistance. Strickland, 466 U.S. at 689, 104 S.Ct. at 2056.
The record in this case shows that the defendant has failed to carry his burden of proof to show that defense counsel’s performance was deficient and that the deficiency prejudiced his case. Contrary to defendant’s contentions, and, despite defense counsel’s advocacy on behalf of defendant, the evidence and testimony presented to the jury overwhelmingly support the jury’s verdict. We find no merit to defendant’s final assignment of error.
CONCLUSION
For all the reasons stated in this opinion, we affirm defendant’s conviction for attempted second degree murder, his adjudication as a fourth felony offender, and his sentence to life imprisonment without probation or suspension of sentence, and without parole for the first fifty years of his sentence.
AFFIRMED.
BONIN and DYSART, JJ., Concurs in the Result.
| ^APPENDIX
As part of defendant’s third assignment of error, defendant claimed that the trial court made twenty prejudicial comments during trial. For the sake of diligent and careful review, we included this appendix to address each alleged prejudicial comment cited by defendant.
The majority of these cited instances direct the court to the trial court’s rulings on hearsay. Through our thorough review of the entire record, we note that the trial court sustained objections from both parties during the course of the three day *800 trial. Defendant, however, presents a one-sided view of the record and bombards this court with complaints as to nearly every objection raised by the State and sustained by the trial court during this trial. We have reviewed the cited rulings and find no error in any that defendant points out here.
In reviewing these complaints, we also note that defendant attempts to reargue the same points as raised in other assignments of error addressed within this opinion. We point out those complaints but we do not re-review them here.
In addressing these alleged prejudicial comments, we quote defendant’s complaints first and our review and analysis of each follows.
1. Without the State objecting, the judge does not like the form of the defense attorney’s question, tells him to not make arguments and to “refrain from that type of behavior.” (Tr. P. 40).
Upon review of the record, the trial court requested that defense counsel refrain from making arguments to the jury when defense counsel commented on the significance of the evidence.
MR. REGAN: You said there was “shots?” Right? Plural?
WITNESS (OFC. ABNEY): As it came out across the dispatch. I don’t think they really make a determination that it’s multiple out — comes out as just signal 94s.
[4SMR. REGAN: Okay. I’m just trying— because the plural of that might be important to the jury. Did it come cross plural shots?
THE COURT: Listen. Mr. Regan, can I have your attention? Don’t make arguments to the jury until after all the evidence has been submitted. The jury will determine what’s important. Let me ask you to refrain from that type of behavior.
The trial court viewed defense counsel’s statement as an argument to the jury about the evidence. As the moderator of the trial, the trial court judge determines whether the attorneys are presenting evidence to the jury in the proper manner. See State v. Baldwin, 388 So.2d 679, 686 (La.1980); see also State v. Jamison, 565 So.2d 1080, 1083 (La.App. 4th Cir.1990). By this complained of comment to defendant, the trial court exercised its function and duty to control the presentation of arguments and evidence to the jury. We do not find the trial court’s comment improper, disparaging or prejudicial.
2. In overruling a valid hearsay objection by the defense that the out of court declarant had not been subpoenaed to testify, the Court instructed the jury “that comment that counsel just made, I want you to disregard that.” (Tr. Trans, p. 114).
During the State’s questioning of Det. Duzac, it posed a question about the detective’s conversation with A.J. Messina. Defense counsel objected on the basis of hearsay and stated, “the District Attorney didn’t list Messina as one of his witnesses.” The trial court overruled the objection and asked the jury to disregard defense counsel’s comment about a witness list.
As to the hearsay ruling, the record reflects that Det. Duzac did not say what Messina had told him. The State did not elicit hearsay testimony from Det. Duzac, and the trial court properly ruled on the objection. As to the trial court’s admonition to the jury, the trial court properly instructed the jury to disregard the reference to the State’s witness list because the witness list is not evidence. Here again, the trial court exercised its function and duty to control the presentation of [44the evidence to the jury and we find no preju *801 dicial effect from the trial court’s comment.
3.When counsel asked the officer (Detective Duzac), “All that we have is a photograph here, at this point. While we have — ,” without a State objection, the Court interrupts, “Listen to me. Look at me. No more side comments to the jury. It’s inappropriate. Don’t do it anymore. Do you understand? Does that mean yes, you understand? Thank you very much.” (Tr. Trans, p. 120).
Just previous to this comment by defense counsel, defense counsel was questioning Det. Duzac about Leban’s signature on the back of the photo lineup. Defense counsel stated: “In fact, you see his signature on the back here, this squiggly stuff like that. Does that appear to you to be a man who’s in severe pain?” The State objected and the trial court sustained the objection. Defense counsel attempted to elicit Det. Duzac’s opinion as to Leban’s physical and mental state even though Det. Duzac had not even been present during the photo lineup at the hospital. In both that statement, and the statement cited within this complaint, defense counsel appears to comment on the evidence and obtain an opinion about that evidence from Det. Duzac.
Despite previous requests from the trial court that defense counsel not make comments to the jury while questioning witnesses, defense counsel persisted in addressing the jury directly. As we noted in reference to the first instance complained of, the trial court has the responsibility to maintain control over counsel’s questioning of witnesses and presentation of evidence to the jury. We find that the trial court, again, exercised its duty to moderate and control the presentation of evidence to the jury.
4. The State objected to the question to Detective Duzac as to whether a photograph was shown to Mr. Messina for identification. The defense asked for the basis. The Court sustained the objection, told counsel to lower his voice, allowed the State to make statements like those that the defense was reprimanded for, and told the defense that he (the judge) could not comment on the evidence but |4Bwould tell him at a break, then sustained three more objections about a missing key witness. (Tr. Trans, p. 121-123).
Defendant does not point to any comment by the judge to defense counsel other than the ruling on the objection. The trial court sustained another hearsay objection for which the State provided the basis: Det. Duzac was not present when Leban viewed and signed the photo lineup and therefore he has no personal knowledge of the photo lineup or signature. We find no error in that ruling and no basis for defendant’s claim that the exchange between the trial court and counsel exhibited any prejudice against defendant.
5. The defense asked Detective Duzac to confirm that the name of another missing witness was “Mr. Harrison” as the prosecutor had stated earlier in his questioning. The Court told the jury to disregard the defense attorney, and then told counsel, “Listen, I don’t care whether you agree with the law nor not, I am just here to enforce the law. Okay? Whether you agree with the law or not is really of no moment. The objection is sustained. Don’t argue with me.”
Defendant neglects to mention that just prior to the foregoing exchange, counsel asked whether Det. Duzac was aware of Oliver Harrison. Det. Duzac responded he did not know of the witness before trial because he did not speak with Harrison and he did not lead the investigation. The trial court had already reprimanded de *802 fense counsel for attempting to circumvent the rules of evidence regarding hearsay. Even so, defense counsel persisted in attempting to elicit hearsay testimony from Duzac concerning what Harrison said to Detective Shepak in violation of La. C.E. arts. 801 through 806. The trial court properly ruled on the evidence. The trial court’s comments included an explanation of the trial court’s duty to apply the law and control the evidence. We find no error or prejudicial effect upon defendant from the trial court’s ruling and comment.
6. In making correct rulings on hearsay, the judge nonetheless was demeaning to the defense attorney telling him to “... look at me. Look up here” and “Spend your time on something else.” (Tr. Trans, p. 130-131).
[46Pefendant attempts to point out each instance in which the trial court ruled on an objection. Out of context, the selected comments by the trial court may appear disparaging, but within the context of the trial and defense counsel’s questioning, we are not convinced that the trial court attempted to demean defense counsel or influence the jury against defendant. The trial court continued to exercise its duty in controlling the evidence and conducting the trial in a neutral manner.
7. When an officer was trying to minimize his role in the interview of a missing witness, the defense attorney asked him if he was intentionally trying to avoid the question and the Court sustained an objection and tells [sic] the jury to disregard the “comment.” (Tr. Trans, p. 145-146).
Defense counsel questioned Det. Duzac about Det. Shepak’s interview with Mr. Harrison. Det. Duzac had already testified that he did not lead the investigation and he did not know the contents of Det. Shepak’s police report, which is inadmissible evidence. Defense counsel persisted in his questioning of Det. Duzac and accused him of intentionally hiding information from the jury. Defense counsel improperly attempted to elicit hearsay testimony and the trial court ruled properly.
8.In cross examining the victim about the haircut of the shooter that could not have matched the defendant, the Court tells defense counsel, “If you want to testify, I’ll have Ms. Thomas swear you in and you can testify; but otherwise, knock off all these side comments to the jury.
Defense counsel stated, “He couldn’t have been the shooter because he doesn’t fit your description, right?” The trial court’s comment attempted to steer defense counsel away from the form of the question, but the trial court overruled the State’s objection to defense counsel’s questioning about Leban’s description of the shooter. We find no prejudice in a comment or ruling that favor’s defendant.
|479. After sustaining the State’s objection to questions about the 911 call, the Court repeatedly tells the defense counsel to look at him, not the jury, and not to talk. (Tr. Trans, p. 227-228).
The trial court exercised control of the presentation of the evidence by not allowing defense counsel to elicit hearsay testimony from Leban. Defense counsel questioned Leban persistently about Harrison’s 911 call. Defense counsel fails to mention here that the trial court was in the midst of explaining why an objection had been sustained when he asked defense counsel to “Look at me. Don’t look at the jury. This has nothing to do with the jury.” From a review of this section of the transcript, we are not convinced that the trial court made any improper or prejudicial comments to defense counsel.
*803 10. The Court would not let the defense re-play the 911 tape of the shooting incident. (Tr. Trans, p. 229).
After repeatedly attempting to question Leban about Harrison’s 911 call in order to have Leban comment on that 911 call, defense counsel requested that the 911 call be played for Leban. Leban could not comment on Harrison’s statements in the 911 call. Lay witnesses are not generally permitted to give opinion testimony except where those opinions are rationally based on the perception of the witness testifying and the opinion is helpful to a clear understanding of that testimony. La. C.E. 701. Listening to the 911 call would not lead to a clearer understanding of either Leban’s testimony or the call itself. As the trial court stated, the evidence speaks for itself and the jury had two opportunities during the trial to listen to the 911 tape. The jurors could rely on their memories to compare the statements they heard on that recording to Leban’s testimony of what happened. The trial court stated as much, and we find no error or prejudicial comment within the trial court’s ruling.
|4S11. During questioning of a former police officer who wrote the initial police report, the Court refused to allow the defense to question the officer about the importance of the report and its accuracy because the officer was now a civilian. The Court reprimanded the defense attorney several times for not looking at him. (Tr. Trans, p. 318-320). During the exchange, when the attorney mistakenly answered “yes”, ma’am” instead of “yes, sir” (Tr. Trans, p. 319), the judge was insulted and angry, and remained so, commenting on it again later (Tr. Trans. P. 328): “You’ve chosen to refer to me as ma’am. Like I’m some kind of woman.”
With regard to the questioning of the former police officer, Ashley Terry, the record indicates that defense counsel attempted to introduce an inadmissible police report. Ms. Terry had stated that she did not recall any of the events of that night. We review this ruling in the second sub-part of this third assignment of error.
As for the alleged intemperate comment by the trial court to defense counsel, this exchange occurred outside the presence of the jury. In our review of the exchange that occurred in the presence of the jury, the trial court did reprimand defense counsel for questioning Ms. Terry about police work in general and the report from that night specifically. Ms. Terry did not have any recollection of that night and at the time of trial she no longer worked for the police department. The trial court explained his rulings to defense counsel and asked defense counsel to respect the court’s rulings. The trial court attempted to control both the introduction and presentation of evidence while maintaining a level of professionalism. Defense counsel’s persistent attempts to sidestep the trial court’s rulings provoked more comments from the trial court. However, we are not convinced that the trial court abandoned its neutrality or made prejudicial comments to or about defense counsel.
12. Shortly after two instances where the jury was removed to put argument on the record, the judge attacked the defense attorney’s training, “If you had that much training”, and told the defense counsel he was “out of line.” Then the judge 149told the jury that it was the defense counsel’s fault that they [sic] had to “climb those stairs again.” After another exchange, the judge sent the jury upstairs two or three more times in a row. (Tr. Trans, p. 325-329).
These sequences were a continuation of the subject addressed in the foregoing example 11. From our review of the entire exchange, we are of the view that defen *804 dant excises portions of the transcript to give a biased, inappropriate impression of the trial court. Our careful review of these proceedings does not convince this court that the trial court conducted itself or the manner of trial in a prejudicial manner.
13. Before the jury was sent out or while they were going out, the judge and defense attorney had an exchange about which of them was “fundamentally” wrong. (Tr. Trans, p. 325). While out of the jury’s presence, the judge said, “Listen, since-you’re going to get more and more agitated and try to get me upset, which is not going to happen. And continue to treat me with utter disrespect and treat my orders with just such a cavalier and disrespectful attitude ...” The court told the defense attorney to back away from the bench and says [sic] he is tired and so is the jury. (Tr. Trans, p. 327-328). The defense counsel only cited the court to articles in the Code of Evidence or noted his objections.' There is nothing in the transcript, during this exchange or any other that supports the judge’s finding of “disrespect.”
The entire exchange referenced above occurred outside the presence of the jury. The trial court sent the jury out of the courtroom to discuss the complained of rulings with defense counsel. The trial court did not comment on the evidence or defense counsel’s behavior in the presence of the jury. Thus, the trial court conducted itself in a manner intended to prevent any prejudice to the jury.
The next six examples cited by defendant are raised again within defendant’s fourth assignment of error to complain of the State’s improper closing arguments. We review these complaints within the following assignment of error.
14. During the State’s rebuttal argument, the Court denied the defense objection, and added, “Have a seat, Mr. Regan, you’ve had your chance.” When defense counsel objected to the court’s comment, the judge repeated it and added, “You’re out of line. Your argument is over.” Then the Court told the jury that he could not comment. (Tr. Trans, p. 258-259).
| ñol5. During the State’s rebuttal argument, the Court allowed the State to argue that the defense “wasted your time” (Tr. Trans, p. 360) and told the defense attorney three times to “cut it out” when he is objecting [sic] to facts not in evidence. (Tr. Trans, p. 364-365).
16. During the State’s rebuttal argument (closing), the defendant was having an emergency but the judge refused to take a break, prompting the State to start mocking the “emergency.” Eventually the Court allowed the defendant to be excused (Tr. Trans, p. 366-367), but the prosecutor then used the event to claim that the “truth hurts” and the defendant was running from it. (Tr. Trans, p. 368).
17. During the State’s rebuttal argument, when the defense [objection] that the argument was outside the record was overruled, the Court told the attorney to sit down and not argue with him. The State commented on the objection, “Again, ladies and gentlemen, pounding the table ... you’ve been seeing it for a week” and they should be tired. (Tr. Trans, p. 369).
18. During the State’s rebuttal (closing) argument, the Court overruled the defense objection to the State’s claim about three bullets being in a neighbor’s trailer, though that was not in evidence, and the Court told the attorney to sit down and stop talking. (Tr. Trans, p. 389-390).
19. Most egregious of all, despite the judge prohibiting the defense from replaying the 911 tape of the shooting incident *805 during trial (Tr. Trans, p. 229), in the State’s rebuttal argument, after telling the prosecutor to “Start wrapping it up,” (Tr. Trans, p. 390), the Court allowed the prosecutor to play the 911 tape of non-testifying Mr. Harrison, stopping it at points, repeating selected statements, and arguing what the State believed he (Harrison) meant. Eight objections were overruled. The Court refused to let defense counsel have a sidebar. (Tr. Trans, p. 391-398).
20. The defense counsel asked to put his motion for mistrial on the record and the judge told him to wait until all of the jury left. (Tr. Trans, p. 413-414). After the jury left, then the Court told him to wait until after lunch. (Tr. Trans, p. 414). After the verdict, the defense counsel tried again, the judge told him to “put it in writing”. (Tr. Trans, p. 418-419).
Defendant contends that defense counsel requested to put his motion for mistrial on the record but the trial court refused. The record reflects that defense counsel requested to put “something on the record.” Defense counsel did not state that he wanted to move for a mistrial. In fact, in response to the trial court’s statement that he “put it in writing,” defense counsel stated he was proffering a four page police report and the court admitted the proffer. Defense counsel did not |B1make any motion for mistrial or state such intention at any time. We find no merit to his claim that the trial court refused to allow defense counsel to put a motion for mistrial on the record.
Our careful review of the entire record, with particular attention to the cited instances of alleged trial court prejudice, does not convince us that the trial court abandoned its neutrality, commented improperly on the evidence, made inappropriate comments in the presence of the jury, or conducted itself in such a manner to prejudice defense counsel or defendant. We find no merit to defendant’s argument that prejudicial comments by the trial court denied defendant a fair trial.

. We address the redundant claims of excessive sentence asserted in counsel's brief and defendant's supplemental pro se brief as one assignment of error.

. At trial, Sgt. Billiot testified that Det. She-pak was unavailable to testify due to the fact that he was injured on duty.

. La. R.S. 15:301.1(A) provides in pertinent part, "[t]he failure of a sentencing court to specifically state that all or a portion of the sentence is to be served without benefit of probation, parole, or suspension of sentence shall not in any way affect the statutory requirement that all or a portion of the sentence be served without benefit of probation, parole, or suspension of sentence.”

. La.C.Cr.P. art. 521 provides that pretrial motions shall be made or filed within fifteen days of arraignment or whatever date is set by the court for the filing of the pretrial motions.

. Defense counsel's motion was filed with the trial court on July 21, 2008. The record also contains defendant’s pro se motion to suppress the evidence which is not stamped or marked as received by the trial court. Both appear to be omnibus/boilerplate pretrial motions, because neither refers to the specific facts of the case. In our discussion of this issue, this court refers only to the motion filed by defense counsel. “[A] trial court need not even entertain pro se motions when a defendant is represented by counsel and entertaining the motions will lead to confusion at trial.” State v. Holmes, 06-2988, p. 80-1 (La.12/2/08), 5 So.3d 42, 94. Although an indigent defendant has a right to be represented by counsel or the right to represent himself, a defendant does not have a constitutional right to both. State v. McCabe, 420 So.2d 955, 958 (La.1982).

. On cross-examination, Det. Shepak stated that Messina had opened the door of the truck after bringing the officers into the garage, but also testified more than once during the hearing that Det. Duzac found it on the ground outside of the truck.

. The Louisiana Supreme Court explained a Brady violation as, "[t]he suppression by the prosecution of evidence favorable to the accused after receiving a request for it ... where the evidence is material to either guilt or punishment, without regard to the good or bad faith of the prosecution.” State v. Sparks, 88-0017, pp. 66-67 (La.5/11/11), 68 So.3d 435, 485. However, "[t]he prosecutor does not violate his constitutional duty of disclosure 'unless his omission is of sufficient significance to result in the denial of the defendant’s right to a fair trial.' ” Id., 88-0017 at p. 67-68, 68 So.3d at 486 (quoting United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976)).

. See attached Appendix. We do not find that the inclusion of the twenty alleged prejudicial comments or our review of each within the body of this opinion would add any light or understanding to the issues presented.

. La. C.E. art. 602, Lack of personal knowledge, provides in pertinent part, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter.”

. La. C.E. art. 803(8)(b)(i) provides, "Except as specifically provided otherwise by legislation, the following are excluded from this exception to the hearsay rule: (i) Investigative reports by police and other law enforcement personnel

. The State questioned Ofc. Abney about his response to the two 911 calls (Leban’s call reporting his stolen cell phone and Mr. Harrison’s call reporting the shooting). While questioning Ofc. Abney about his contact with Leban in response to the first 911 call, the trial court sustained a hearsay objection by defense counsel and then cautioned the witness again not to repeat what Leban had told Ofc. Abney.

. The crime scene investigation signature sheet also constitutes inadmissible hearsay, under La. C.E. art. 803(8)(b)(i), as part of the investigative report of the crime.

. Defendant related the following as his fifth example of a biased ailing on hearsay:
Immediately after the Court ruled that (the victim’s) alleged photo identification was not hearsay, the defense asked whether (the victim) described short hair or two men. The Court sustained objections, commenting, “Look at me. Don’t look at the jury ... It’s very basic ...” and told the jury to disregard the answer. The Court told the defense attorney to stop talking and would not let him put something on the record. (Tr. Trans., p. 155-157). When the Court refused to allow a question about the investigation, the Court told the defense attorney, "Don’t try to circumvent the law ... ”, again refused to let the defense put anything on the record but announced, “Let the record reflect that (defense counsel) is starting to get agitated. Do you need to take a break?” starting an exchange about the Court refusing to allow the objection to be put on the record. (Tr. Trans., p. 158— 159).

. By asking Ofc. Billiot whether his investigation indicated the involvement of two people, defense counsel framed the question in terms of the officer’s course of investigation. Louisiana jurisprudence recognizes an explanation exception to the hearsay rule that allows police officers to describe the steps of an investigation leading to the arrest of a defendant. State v. Legendre, 05-1469, pp. 11-14 (La.App. 4 Cir. 9/27/06), 942 So.2d 45, 52-54.
The application of this exception is illustrated in State v. Hawkins, 96-0766 *790 (La.1/14/97), 688 So.2d 473. In that case, the investigating officer testified that an anonymous caller reported that there were three women in the vehicle with the defendant, who the caller stated was the perpetrator of the robbery and murder. The detective interviewed the women, who gave statements inculpating the defendant. They later testified at trial.... On review, the Louisiana Supreme Court in Hawkins held that the first part of the detective’s testimony regarding the tip — his testimony that the caller stated that there were several individuals in the car with the perpetrator — was relevant and not hearsay. The court stated that this testimony squarely fit within the explanatory exception, because this testimony merely explained the course of the police investigation and the steps leading to the defendant's arrest. Hawkins, 1996-0766 at p. 5, 688 So.2d at 478.
Legendre, 05-1469 at p. 13, 942 So.2d at 54.

. The State introduced both 911 recordings into evidence without objection by defense counsel. The State presumably introduced the recordings under the public records exception to the hearsay rule, La. C.E. art. 803(8) while questioning the New Orleans Police Communications Center 911 records custodian, Kathy Robinson. The State played both 911 recordings for the jury. Robinson did not testify as to any details of either recording. Later in the trial, Leban was questioned by both the State and defense counsel about his statements during his 911 call. No testimony was presented about the details of the second 911 call from Harrison, but the tape was played by both the State and the defense during the trial.

. The record does not include a transcription of Harrison’s 911 call.

. In State v. Millican, 03-1065, p. 4 (La.App. 1 Cir. 2/23/04), 874 So.2d 211, 213-14, the First Circuit reviewed the range of jurisprudence on the admission of 911 tapes as follows:
The jurisprudence on this issue is not totally consistent. See, e.g., State v. Brown, 02-1217 (La.App. 4th Cir. 5/28/03), 853 So.2d 8, 14 (court concludes it was error to admit a 911 tape, stating it was clearly hearsay, but further concludes it was harmless error); compare U.S. v. Bradley, 145 F.3d 889, 892-94 (7th Cir.1998) (court concludes 911 tape was neither confusing nor prejudicial, holding defendant’s challenges on those grounds were insufficient to justify its exclusion); Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir.1995) (911 tapes admissible as either a public record or a business record, but because citizens making such calls are not under a duty to report, the statements on tapes must also satisfy a separate hearsay exception, such as present sense impression or excited utterance); U.S. v. Sallins, 993 F.2d 344, 347-48 (3rd Cir.1993) (even if die 911 record itself is admissible under Federal Rule 803(8), details as to the out-of-court statements made by the person who called 911 were not admissible unless covered by a separate hearsay exception); State v. Ballos, 230 Wis.2d 495, 505-07, 602 N.W.2d 117, 122-23 (App.9/21/99), review denied, 233 Wis.2d 84, 609 N.W.2d 473 (2/22/00) (911 tapes reporting fire and arson admissible as present sense impressions, excited utterances, or statements of recent perception exceptions to hearsay); State v. Parker, 1997 WL 195922 p. 5 (Tenn. *795 Crim.App.4/23/97) (admission of a 911 tape as a public record was error, even though the contents of the tape qualified as an excited utterance, because the voices on the tape were not identified); State v. Smith, 868 S.W.2d 561, 576-77 (Tenn.1993) (affirms admission of 911 tape under excited utterance exception to the hearsay rule).

. Counsel’s assignment of error # 5 and pro se assignment of error # 2

. Defendant incorrectly states that the trial court imposed a life sentence without benefit of parole, probation, or suspension of sentence but that the sentence was imposed under 15:529.1(A)(4)(a) which does not include any restriction of benefits. As we noted in our review of the error patent, the trial court imposed a sentence in compliance with the statutory restrictions mandated by the Habitual Offender Law in La. R.S. 15:529.1(G), i.e. without probation or suspension of sentence.

. Defendant's appellate counsel filed two motions for leave to file a brief in excess of the page limitation. This court granted the first of those motions and granted defense counsel an additional ten pages in excess of the twenty eight page limitation, but denied the second motion requesting an additional nine pages, for a total of 47 pages.